## Savings Institution *versus* James Makin *&* *al.*

This Court, acting as a court of equity, may compel trustees to execute a
trust assumed by a corporation according to the scheme prescribed ; but has
no power, unless specially conferred by statute, to sequester the funds of a
corporation, and deprive it of them, and dispose thereof, as the Court may
judge to be equitable and just, among those beneficially interested.

Equity is not the Chancellor's or the Judge's sense of moral right, or his
sense of what is just and equal, but is a complex system of established law.
The maxim, that equality is equity, can only be applied according to estab-
lished rules.

The act of 1842, c. 32, " in relation to institutions for savings" is not un-
constitutional.

That statute confers on this Court, as a court of equity, the power to seques-
ter the whole assets of an incorporated savings institution, upon application
of the trustees or of a depositor, and place the same in the hands of a re-
ceiver, to the end that a just and equitable distribution may be made
thereof among all the depositors according to the respective amounts justly
due them, whenever such institution shall not have sufficient assets to pay
and discharge in full all just and legal claims upon it.

A saving clause in a statute, in the form of a proviso, restricting in certain
cases the operation of the general language of the enacting clause, is not
void because such proviso may be repugnant to the enacting clause of the
same statute.

THIS was a bill in equity, and after its address to the Court,
commenced thus : "Complain your orators, Stephen Long-
fellow, Joshua Richardson, Albert Newhall, Eliphalet Greely,

William Swan, Levi Cutter, William Pitt Preble and William Willis, as they are the board of trustees of the Institution for Savings for the town of Portland and its vicinity, that the said institution for savings was duly incorporated by the legislature of the Commonwealth of Massachusetts, by an act entitled "An act to incorporate the Institution for Savings for the town of Portland and its vicinity," passed the eleventh day of June, in the year of our Lord one thousand eight hundred and nineteen." In another part of the bill it is said, "*as the several depositors, as well as your orators and the said Institution for Savings,* are remediless in the premises at and by the direct and strict rules of the common law, and cannot have adequate relief save in a court of equity." The bill appears to have been brought by the gentlemen who were trustees of the corporation, but as the entry in Court was made in the name of the "Savings Institution," as plaintiffs, and the trustees have no personal interest, the corporate name is retained, in place of that of the plaintiffs.

The main provisions of the act of incorporation and of the by-laws, will be found in the opinion of the Court in this case, and in the preceding case of *Makin* v. *The Savings Institution;* and it is unnecessary to repeat them here. The substance of the bill and answers is also stated in the opinion.

The case was argued on April 21 and 22, 1843, by

*Longfellow* and *C. S. Daveis,* for the plaintiffs; and by

*Codman & Fox,* for Makin ; and by

*Morgan,* for Gardner.

On June 7, 1845, the opinion of the majority of the Court, WHITMAN C. J. dissenting, was delivered by

SHEPLEY J. — This is a bill in equity filed by eight persons describing themselves as the board of trustees of the institution for savings for the town of Portland and its vicinity. It alleges, that the institution received from its depositors an amount of money exceeding one hundred thousand dollars; that it invested the greater portion of it in the stocks of incorporated banks of good credit ; that those banks have since that time

sustained losses, and that the stocks purchased by the institution are not worth, upon an average, more than fifty per cent. of their cost; that a smaller portion of the money was loaned to individuals upon personal security, then esteemed to be good, from which nothing has been obtained; that the parties to that paper have become insolvent; that twenty per cent. of the principal has been paid out to the depositors; that all the property and assets of the institution at their market value are not sufficient to pay fifty per cent. of the whole sum still standing on the books of the institution to the credit of the depositors; that certain of the depositors named have caused suits to be commenced against the institution and its property to be attached, with the design to obtain the full amount due to them to the injury of the other depositors; that the institution is a trustee for each and all of the depositors; that each depositor ought to bear his just proportion of the losses; that the trustees are desirous of making a just and equitable distribution of the assets among all the depositors; and that such a distribution cannot be made without the interposition of this Court. There is a prayer in the bill, that the assets of the institution may be sequestered; that a just and equal distribution of them may be made among the depositors; and that those depositors, who have commenced suits at law against the institution, may be enjoined from the further prosecution of them.

The only persons who have entered their appearance after notice to all persons interested, are James Makin, in his own right, and as administrator of the estate of Luke Makin deceased, and Jane Gardner. The answer of Makin states, that he had commenced a suit against the institution and obtained a verdict, and another suit as the administrator of the estate of Luke Makin, in which a default had been entered, before the passage of the act of March 18, 1842, c. 32. It craves the benefit of the proviso contained in the fourth section of that act. Jane Gardner demurs to the bill; and her counsel has signified, that no further defence will be desired, if her demurrer should be overruled.

The counsel for the trustees insist upon their right to maintain this suit, and to obtain a decree for an equitable distribution of the assets of the corporation, without reference to the provisions of the act of March 18, 1842. The trustees or managers of the corporation are in this bill the parties plaintiff. The corporation does not thereby become a party to it. It has not been made a party. The Court cannot properly act upon its rights and property independently of that act, sequester the property, and deprive the corporation of its use, without affording it an opportunity to be heard. *Verplanck* v. *Mer. Ins. Co.* 2 Paige, 449. But waiving the consideration of a defect of parties for such a purpose, the question arises, whether the equity powers of this Court would authorize it to make such a decree before the passage of that act. It had power to hear and determine all cases of trust. To ascertain the extent of its power over this corporation by virtue of its. jurisdiction in cases of trust, it will be necessary to notice the character of the corporation, and its relation to its depositors. The institution for savings is a body corporate, created by an act of the legislature of Massachusetts, approved June 11, 1819. Twenty-five persons named in the act, with such other persons as they might associate with them, were incorporated into a society by a corporate name. The corporate body was to be continued and perpetuated by the members named by the election of other persons from time to time as their associates. The act provides, " that they and such others as may be duly elected members of said corporation, as in this act is provided, shall be and remain a body politic and corporate forever." The fourth section of the act is in these words. "Be it further enacted, that the said society and corporation shall at their first and their annual meetings in July, have power to elect by ballot any person or persons as members of this society." There is no provision in the act requiring, that the members of the corporation should be depositors of money or have the least interest in the funds of the corporation. Neither the charter nor the by-laws make any provision, that those, who should deposit money, should thereby become

members of the corporation or have any right to vote or act in any manner in the choice of its officers or in the conduct of its affairs. It was not the design, that they should become members. Poor and improvident persons, females, and minors, were the persons to be especially benefitted. They would be ill qualified to be the managers of their savings, and equally ill qualified to select others for that purpose. The corporators were not designed to be, and there is no proof that any of them were, in fact, the persons, who were interested in the funds held by the corporation. In this respect the organization and character of the corporation differs entirely from banking, manufacturing, and other corporations, created for the transaction of business for the benefit of the corporators. In such corporations persons by a purchase and transfer of shares become members of the corporation without election. The corporators or members are the persons beneficially interested. Not so in this corporation. The persons beneficially interested are not members of the corporation, and cannot interfere with or control any of its proceedings. The corporation and its corporators are wholly independent of the depositors. The only connexion between them is to be found in the stipulations, to which they have mutually agreed. In all of them the depositor is one party, and the corporation another and different party, as well in essence as in name. Any attempt therefore to show, that the regulations prescribed by the corporation were in effect the regulations of the depositors in any other manner, than by their assenting to them ; and that the depositors were in effect both promisors and promisees in their contracts, made with the corporation, must utterly fail. Such an idea could only arise out of a misapprehension of the organization and character of the corporation by erroneously supposing the depositors to be members of the corporate body, and as such able to elect its officers and regulate its affairs.

A corporation may, if its charter permit, assume a trust, and act in the character of a trustee for persons other than its stockholders and creditors. Eleemosynary corporations hold their funds in trust to accomplish certain charitable purposes ;

and their managers may be compelled in different modes by visitors and legal tribunals to execute such trusts; and to apply the funds according to their prescribed rules. The Lord Chancellor in England has, as such, a peculiar jurisdiction or power over them. While the jurisdiction of the Court of Chancery is limited to the control of the managers of the revenues or funds, to prevent abuse or misapplication of them, and to compel them to execute the trust. *Att. Gen.* v. *The governors of the foundling Hospital,* 2 Ves. jr. 47; *Same* v. *Dixie,* 13 Ves. 533; *The mayor and commonalty of Colchester* v. *Lowten,* 1 V. & B. 245; *The Berkhamstead free school, ex parte,* 2 V. & B. 138; *Att. Gen.* v. *Utica Ins. Co.* 2 Johns. Ch. R. 389. If this bill had been filed by a party beneficially interested, and had alleged, that the trustees had mismanaged or misappropriated the funds of the corporation, it might have presented a case within the power of the Court. But the trustees claim to have faithfully executed and performed all their duties; and they ask the assistance of the Court, not to enable them to continue to perform their duties, and execute the trust according to the charter, by-laws and regulations, but to enable them to make a disposition of the funds destructive of the further execution of the trust, and not authorized, except upon a contingency, which has not happened. The twenty-second by-law would have authorized them to divide the whole of the property among the depositors in proportion to their respective interests therein, upon giving three months' notice thereof. This course might have been pursued, and the present object have been accomplished without the aid of the Court. As there has been no action under that by-law, it remains wholly inoperative for the present purpose. The Court can derive no power from it. While the Court may compel trustees to execute the trust assumed by a corporation according to the scheme prescribed, it has no power, unless specially conferred by statute, to sequester the funds of a corporation, and deprive it of them, and dispose of them, as it may judge to be equitable and just, among those beneficially interested. *Corp. of Salop* v. *Att. Gen.* 3 Bro.

P. C. 241; *Taylor* v. *Dulwick Hospital,* 1 P. Wms. 655; *Att. Gen.* v. *The Bank of Niagara,* Hopk. R. 354; *Same* v. *The Bank of Chenango,* idem, 598; *Verplanck* v. *Mer. Ins. Co.* 1 Edw. 84; *Robinson* v. *Smith,* 3 Paige, 222. The Court may, however, in case of gross abuse, deprive a corporation or other trustee of the funds, and commit the administration of them to other hands. *Att. Gen.* v. *The Earl of Clarendon,* 17 Ves. 499. But this power does not authorize the Court to annihilate the charity by a distribution of the funds; or to appropriate them in any manner not in accordance with the scheme prescribed for the administration of the charity. The cases already referred to show, that the relation of trustee and *cestuis que trust,* does not ordinarily exist between a corporation and its corporators. While it does exist between the trustees or managers of the corporation and those interested in its funds. But such a relation no more authorizes a court of equity, than a court of law, to take possession of the funds and appropriate them according to its own arbitrary sense of what would be just and equal. Equity is not the chancellor's sense of moral right, or his sense of what is just and equal. It is a complex system of established law. Mr. Justice Story appropriately remarked, in the case of *Greene* v. *Darling,* 5 Mason, 215; "if by an equity is meant a mere dictate of natural justice in a general sense, it is not worth while to discuss it, because this Court is not called upon to administer a system of mere universal principles." The maxim, that equality is equity, can only be applied according to established rules. It cannot be applied even in the marshaling of assets so as to make an equal distribution of them, without some rule of law authorizing it, unless they are equitable assets. 1 Story's Eq. § 60.

The plan of the institution, in the case of *Pearce* v. *Piper,* 17 Ves. 1, was found to be defective. It operated as a felo-de-se. It was arranged by articles of agreement. There was no corporation. The Court may deal very differently with the property of individuals, whose respective rights to it are secured by contract, from what it can with the property of a

corporation, the charter of which controls the disposition of the property. That case furnishes no authority for the Court to interpose, as it is desired to do in this case. If the inability of a corporation to fulfil all its contracts had authorized a court of equity, without any statute provision for that purpose, to take possession of its property, close up its affairs, and distribute its assets among its creditors and shareholders, upon the application of its managers, there would doubtless have been found many reported cases showing the exercise of such a power. Yet no such case has been presented; while there are cases, in which the power has been distinctly denied. The case of *Bryant* v. *Russel,* 23 Pick. 534, authorizes no such proceeding. So far as it can be applicable to this case, it only decides, when a trust fund is subject to the disposal of the Court, and is found to be insufficient to pay all the claims upon it in full, that payment is to be made *pro rata* to the parties legally entitled to be paid.

It is contended, that this corporation assumed no other or greater responsibilities, than those incurred by a common trustee, and that it is only obliged according to its charter, by-laws and regulations to deliver to the depositors the funds, which remain in its possession. The character of the corporation and the contract made with each depositor, have been the subjects for consideration and decision in a case at law between Makin and the corporation, recently decided, *ante* 350; and it is unnecessary to do more than refer to the opinion in that case for the reasons of the conclusion, that the institution assumed responsibilities greater and more onerous than those, which attach to a common trustee. To the argument, that the law regulating the rights of partners might authorize the Court to dispose of the assets among the depositors, a like answer may be given. It was considered in the case at law, and the conclusion was, that the relation of partners could not be considered as existing between the parties.

The next inquiry is, whether the Court is legally authorized by the act of March 18, 1842, c. 32, to sequester the assets and make the decree prayed for in the bill. The first section

of that act not only confers the power in the most ample manner, but it requires the Court to exercise it, when properly called upon by a suitable process to do so. It authorizes the trustees to file the bill. It authorizes a general notice to all interested, that they may appear and show cause against it. The corporation might have appeared upon that notice, but has not. Its rights therefore must be considered as submitted for decision.

The counsel for Jane Gardner resists the exercise of such a power on the ground, that the act is unconstitutional and void, among other. reasons, because it impairs the obligation of the contract between her and the corporation. The act, however, does not operate upon the contract or attempt to impair or alter its effect. It still remains valid and subsisting. There is nothing in the act to prevent a recovery of judgment against the institution for any balance, that may be due to her, after she has received her dividend under the provisions of the act. Such a judgment, it is true, might not be of any value, because the corporation would have no property, from which satisfaction could be obtained. It was doubtless this consideration, that induced the legislature to declare, that a decree of sequestration should operate as a stay or supersedeas of an execution on a judgment recovered. But this provision, as well as that which dissolves attachments, acts only upon the remedy. The effect of the act is to afford to the depositors a new and different remedy for the recovery of the amount due to them, instead of the remedy before provided by the laws for that purpose. It is in principle the same as the statute c. 77, authorizing this Court in certain cases to appoint receivers to take possession of the assets of banking corporations, and cause them to be distributed among those legally entitled to them. Enactments involving the same principles have for a long time existed in the State of New York ; and her Courts have exercised the powers thus conferred upon them. *Matter of Niagara Ins. Co.* 1 Paige, 258; *Ward* v. *Sea Ins. Co.* 7 Paige, 294. The demurrer of Jane Gardner is overruled. Her defence fails; and she must be regarded as submitting to a proper decree.

The effect of the proviso in the fourth section of the act of March 18, 1842, will next be considered. That proviso is in the following words. "Provided that this act shall not interfere with or apply to the suit of any depositor, which shall have been defaulted, or upon which a verdict shall have been rendered for the plaintiff, prior to the passage of the same." The suit commenced by Makin in his own right, and that commenced by him as the administrator of Luke Makin, are saved from the operation of the act by the proviso. It is said, that the proviso is inoperative, because it is repugnant to the enactments, which require that there should be a just and equitable distribution of the assets among the several depositors in proportion to their respective claims. It has not been an unfrequent mode of legislation to frame an act containing general language in the enacting clause, and to restrict its operation by a proviso. It would often be found difficult to limit the language in the enacting clause, so as to admit every exception or limitation designed to be introduced into the section in its finished state. If such limitations are to be adjudged void for repugnance, a great number of statutes must receive such a construction, as will impair or destroy the title to a very great amount of property, as well as a very great number of valuable and important rights. The mischief would be incalculable. Take for example a recent act of legislation establishing a uniform system of bankruptcy throughout the United States. The enactments in the five first sections are restricted by one, two, or three, limitations of each section in the form of a proviso. The household furniture, wearing apparel, and other necessaries for the bankrupt, were saved from the operation of the general language of the enacting clause of the third section by a proviso. And there can be no doubt, that the language of the proviso is repugnant to the general language of the enacting clause. So the rights of married women and minors, and liens, mortgages, and securities on property, were saved from the operation of the general language of the act by the third proviso of the second section. All such saving clauses in the form of a proviso have been

considered by judicial tribunals to be valid and effectual. No case will be found, which decides otherwise. It is the misapplication of a principle to insist, that such saving clauses in the form of a proviso are void, because their language is repugnant to that contained in the enacting clauses. No such doctrine will be found in Plowden, 565. The case there referred to by Chancellor Kent in his commentaries (1 Kent, 461) was this. The act of 38 H. 8, for the attainder of the Duke of Norfolk, was declared by the act of 1 Mary to be no act, but utterly void. In the latter act there was a proviso, that it should not extend to take from the patentees of the king any lands of the duke held by them. The proviso was decided to be inoperative to save the rights of the patentees, not because it was repugnant to the enacting clause of the act in which it was found, but because the act of attainder having been declared to be void, no title could be derived under it, and the proviso would not give title. But the text of Kent only authorizes the conclusion, that a saving clause would be void, when it could not stand " without rendering the act inconsistent and destructive of itself." Not when the saving clause only excepts certain rights from the operation of the act, leaving it to accomplish its principal object. This is shown by his reference to Alton Wood's case, 1 Co. 47, (a) as an illustration of the rule.

There can be no possible doubt, that it was the intention of the legislature to except the suits of depositors, in which verdicts had been obtained for the plaintiff, and in which defaults had been entered, before the passage of that act, from its operation. It is declared in language too explicit for elucidation. No ingenuity of reasoning can make such intention appear to be doubtful, or obscurely exhibited.

The result is, that this Court may by virtue of the power conferred upon it by the act of March 18, 1842, c. 32, make a decree to sequester and dispose of the assets of the institution for savings according to the provisions of that act. The case calls for its interposition, and the Court decrees, that all the assets and funds of the institution, which remain after pay-

ment of the sums due to James Makin in his individual and representative character, be sequestered; and that a receiver and commissioners be appointed, who are to proceed, under the direction of the Court, according to the provisions of that act.

A decree is to be drawn up accordingly.

A dissenting opinion was delivered by

WHITMAN C. J. — By the statutes of this State, general equity jurisdiction over trusts has, for a number of years past, been conferred upon this Court. Power so conferred embraces whatever is incidental thereto, and necessary to accomplish the object for which the power may have been conferred. Accordingly it was held in *Buck* v. *Pike*, 2 Fairf. 23, that the equity powers of this Court extended, as well to implied as to express trusts. In general the jurisdiction of a court of equity over trusts is held to be exclusive. In Story on Equity the jurisdiction of courts of equity is divided into two classes; one in which they have with the courts of common law concurrent; and the other, in which they have exclusive jurisdiction; and trusts are set down as belonging to the latter; and it cannot be questioned, but that there are numerous cases of trusts, in which courts of law are quite incompetent to administer adequate relief.

The bill of the plaintiffs discloses a case of a pure trust, in which the institution represented by them are the trustees. They were to perform their duties gratuitously; and, of course, were not guarantors further than for their own fidelity. They were destitute of power to make gain for their *cestuis que trust*, other than what the deposits afforded, aided by faithful management on their part. The institution was one of pure benevolence and charity; originating in the kindest feelings, and fondest expectations; having it in view to aid individuals of small means to turn their surplus earnings to a profitable account. In this case it is admitted by the counsel for the defendant, Makin, that those hopes and expectations have been sadly disappointed, by the loss of at least forty per centum of

the aggregate amount of the deposits. It is not, nevertheless, suggested, nor is there the least proof tending to show, that the management of the plaintiffs has been otherwise than in accordance with every degree of prudence and foresight, which could reasonably be expected. The melancholy reverse of times, which occurred in 1837 and 8, was not foreseen or apprehended by many of the shrewdest and keenest calculators among our men of business. It was in its effects a visitation, not unlike that of a tempest or a whirlwind, prostrating and demolishing every thing before it.

The plaintiffs, on entering upon their trust, made certain regulations or by-laws. These would seem to indicate, that nothing but gain was to be expected; that the idea of a failure or loss scarcely occured to their minds. These were enacted, nevertheless, in perfect good faith. Among other things it was provided, that a depositor should, upon certain terms, have a right to withdraw his deposit; and upon certain other terms, should have a right to do so with four per cent. interest; and, finally, that he should, if he continued his deposit, be entitled, not only to his four per centum interest, but also to his share of the surplus profits. These, it has been contended, amounted to a promise obligatory upon the plaintiffs. But who are the plaintiffs? They are but the trustees; and, as such, the agents of each and every of the depositors. The regulations were made as and for them, and in their behalf. These were, then, in effect, the regulations of the depositors themselves. The funds of no one else were to be affected by them. The individual corporators are not responsible; nor are their funds individually, to be affected. If there be a promise, then, who is the promisor? and who the promisee? The depositors are both. It must be deemed to be a case of implied mutual undertaking between them. The regulations amount to an agreement, that they are to divide the profits between them, if any there may be; and, as it would seem to follow of course, to share in the losses, in case any should occur. To effectuate this the plaintiffs are the trustees, agents and factors of the depositors. The case of *Bryant & al.* v. *Russel & al.* 23

Pick. 508, shows very clearly in what light the promises of trustees are to be viewed. That was a much stronger case of a promise than the one here. It was an unqualified promise to pay certain classes of debts, of a certain firm, a deposit having been made with the promisors for the purpose. Yet the Court held them responsible only for a *pro rata* division of the fund; regarding them as mere trustees, and as having made the promise under a mistaken apprehension, that the funds received were sufficient. This case shows further, that, when trustees are so answerable, a court of equity will cause equal and exact justice to be done; and not allow any one creditor to avail himself of more than his equitable proportion of a fund so held.

The marshalling of assets in the hands of trustees, is believed to be no uncommon occurrence in equity jurisprudence. Executors and administrators are viewed as trustees. Estates of deceased persons are held by them in trust; constructively so at least. In England they are always so viewed. Having no statute law there, directing how the estates of deceased debtors shall be distributed, when there happens to be a deficiency of assets, application is made, either by a creditor or the executor or administrator, to the Court of Chancery, which will prevent a scramble among the creditors; and cause a *pro rata* distribution to be made, similar to what was effected in the case before cited of *Bryant & al.* v. *Russell & al.*

That trustees are under the protection of a court of equity, as well as accountable under its administration, the authorities clearly show. They may, whenever in difficulty, apply to such Court for aid and direction. *Dimmock & al.* v. *Bixby & al.* 20 Pick. 368. The plaintiffs are in this predicament. They are trustees, having in their hands funds, belonging to a great number of individuals, in different proportions, according to the amount of the deposits of each. They are sued at law by some of those individuals, who claim to have the whole of their deposits, with interest, returned; and are in danger, from the rules of law, of having an undue proportion of the funds abstracted by those individuals, to the injury of the other de-

positors. This can be neither equitable nor just. They, therefore, apply to this Court for its interposition, to secure the equal rights of all concerned. And it is a case in which, it seems to me, a court of equity could not refuse to interfere. It is equal and exact justice, which we are bound to administer. It is a trite but true maxim, that equality is equity. It would be monstrous to allow the one half of the depositors to exhaust the whole fund, leaving the others without any resource whatever. The right of each depositor to his just proportion of the fund is absolute, and vested. A right in equity, where equity jurisdiction exists, and, especially, where it is exclusive, is as much a vested right as a right at law; and it is not in the power, it is believed, even of a legislative act to take it from one man and vest it in another. In the case of a partnership between two or more individuals, each having a right to so much of the joint stock as might remain after the payment of debts, it would not be competent for the legislature to enact, that one of the partners should be permitted to abstract and retain from the other more than his just proportion of the stock; or, if he had got into his possession any greater proportion, that he should be permitted to retain it; and that the other partners should be entitled only to a division of the residue. Nor in the case of a general average of a loss occasioned at sea by jetson, would it be competent for the legislature, after a loss had occurred, to undertake to determine, that either the ship, freight or cargo should be protected in a claim to more than its just and average proportion of the contribution. The case at bar is very similar. A loss has occurred of the joint adventure. It is a loss no more of one of the concern, than of every other. It is necessarily the loss of each, in proportion to his outlay; and no power can say that it should be otherwise borne. The legislature cannot say, that what is justly due and owing to one man shall be paid to, and become the property of another. The statute of 1842, c. 32, is confirmatory of these principles, and renders them applicable in an especial manner to savings institutions.

But it is said, by my associates, in the opinion delivered by them, that a court of equity " has no power, unless specially conferred by statute, to sequester the funds of a corporation, and deprive it of them, and dispose of them as it may judge to be equitable and just, among those beneficially interested." This, as a general principle, in the abstract, is not intended to be controverted. But if this corporation is clothed with a mere naked power in trust for others, as seems to be undeniably the case, I do not understand why, upon the application of the trustees in behalf of the institution, a court of equity, for the reasons before given, may not afford its aid in enabling the trustees to do precisely that, which, under existing circumstances, it has become indispensable to have done. The Court in such case do not act *in invitum ;* and we have before seen that trustees are entitled to the aid of a court of equity to enable them suitably to manage trust estates.

Again it is said in the opinion, that the trustees seek for aid " to enable them to make a disposition of the funds, destructive of the further execution of the trust, not authorized but upon a contingency, which has not happened." It seems to me that this can hardly be said to be the case. It is true that the contingency referred to has not happened. But a contingency has happened of a much more imperious character. By inevitable accident it has manifestly become impossible for the institution to accomplish the benevolent objects originally in view. This Court having decided, that the institution is liable to a suit at law by each and every of the depositors, and that each and every of them is entitled to judgment for the full amount of his deposit, a door is thrown open to a general scramble to abstract the funds from the control of the institution. Can it be that trustees, though acting under the form of an act of incorporation, are not, under such circumstances, at liberty to resort to a court of equity for relief? The cases cited in the opinion in reference to this point seem to me to be wholly inapplicable to a case like the present. The corporators here are not the proprietors of any stock, or of any funds. The institution, though factitious, is the merest

agent and trustee imaginable. It was intended to act exclusively for others, who were to be the sole beneficiaries to be provided for. The corporation is *sui generis* unlike any, it is believed, that has ever before been the subject of an adjudication. Cases precisely applicable are not therefore to be looked for in the reports.

The opinion seems to contemplate, that the individuals, who have preferred the bill, styling themselves the board of trustees of the institution, are acting for themselves; and that they are not to be identified with the corporation; and that the corporation might be considered as an independent party : For it says that the corporation might have appeared upon the notice given, but has not. Its rights therefore must be considered as submitted for decision. It seems to me it would be much more correct to say, that the individuals named apply as representatives of the corporation, and that not having appeared upon notice given, to question the authority of the petitioners to act in their behalf, they must be regarded as virtually the plaintiffs in equity. This is by no means the first instance of an appearance of one or more individuals in behalf of others; and the statute of 1842 manifestly contemplates that savings institutions should so appear in Court. It seems to me therefore that the corporation "has not been made a party" is incorrect.

The defendant, Makin, in his individual behalf, and as administrator of the estate of Luke Makin deceased, in his answer opposes the granting of the prayer of the plaintiffs' bill, alleging that he has two suits, one for himself, and the other as administrator, pending in this Court against the plaintiffs; that in one of them a default has been entered; and in the other, that a verdict has been returned in his favor ; and sets forth the act above referred to, and relies upon a proviso in the same contained, which purports to exempt from the operation of the enacting part of the act, all suits wherein a default has been entered or a verdict had been returned for the plaintiff; and insists that this Court has no authority to proceed, under this application, but by virtue of that statute; and is therefore concluded by the proviso contained in it.

What has already been said is believed to be sufficient to show, that this Court, as a court of equity, had jurisdiction generally over trusts; and that the case stated in the bill, is purely a case of trust; and that such cases are peculiarly under the supervision and regulation of a court of equity; and that such court is vested with ample powers to accomplish, substantially, all that, by virtue of the above statute, was in contemplation of the legislature, with the exception, however, of what is contained in the proviso. As such court, it clearly had no right to exempt Makin, and his intestate, from the operation of the principle, that equality is equity. The whole of the enacting part of the statute shows most clearly, that the legislature emphatically recognized the principle, that equality is equity; and expressly provides, that the Court shall cause the net funds, in cases like the one here presented, to be "distributed and paid, according to equity and good conscience, to and among the several depositors *in proportion to their respective claims.*" It moreover provides, upon the sequestration authorized and provided for therein, that the same "shall operate at law, and in equity as a dissolution and discharge of any and all attachments of any goods, effects, rights and credits of such institution, which shall be, or *may have been made*, in any suit at law, brought against any such institutions, by *any creditor or depositor*, or their legal representatives, and shall further operate as a stay and supercedeas of *any execution on any judgment*, which is or may be recovered in any such suit." Nothing can be more directly repugnant to such language, than the seeming import of the proviso relied upon.

But it does sometimes happen that the legislature do not express themselves in conformity to what, from the context, must be taken to be their meaning. The enacting part of the statute is generally considered as more clearly expressing what is intended, than the preamble, or the saving clauses. It is the most natural and satisfactory mode of arriving at the true exposition of a statute, to construe each part of it in connexion with every other part, for that best expresses the meaning of the makers; and such construction, says the 1st Inst. 381, is

*ex visceribus actus.* In *Archer* v. *Bokenham,* 11 Mod. 161, Lord Holt says, "In doubtful cases we may enlarge the construction of acts of Parliament, according to the reason and sense of the lawmaker, expressed in other parts of the act, by considering the frame and design of the whole." And in the 10 Mod. 115, it is said, "the purview of an act may be qualified or restrained by a saving in the statute." But in the 1 Kent's Com. 462, it is laid down that "a saving clause in a statute, where it is directly repugnant to the purview, or body of the act, and cannot stand without rendering the act inconsistent and destructive of itself is to be rejected." These authorities do but show, that laws must be interpreted according to what, on the whole, must have been the intention of the law maker; and such intention may well find support when found manifestly in accordance with the rules of equity and justice. Plowden, 465, note.

From the purview and body of the act in question, nothing can be more obvious than, that the legislature were impressed with a profound sense of the entire justice of an equality of distribution among the depositors, in proportion to the amount deposited by each. Yet the proviso would be directly opposed to such a principle; and destructive of the object of the act, and in violation of its express language in other parts; and, moreover, of the principles of the soundest equity; and indeed in utter disregard of the vested rights of certain of the depositors. To give effect to the proviso taken literally, one or two of the depositors are to be permitted to receive nearly or quite double the amount of their just and equal dividend; and, the additional amount to make it up, is to be taken from the just proportions of the other depositors. The bare statement of such a proposition is enough to show, that it never could have been in accordance with the deliberate will of the legislature.

But it is contended that Makin, for himself, and as administrator, has litigated his claims, and has obtained a verdict in one case, and a default in another, and that thus his legal rights are *res judicata*; and that it is not competent for the Court to interpose, and interrupt his progress. But no act is

more common, perhaps, in a court of equity, than that of an interposition, by way of injunction, to stay proceedings at law; even when they have progressed to execution, if the proceeding, according to the course of the common law, is tending to produce an unjust result. The rules of proceeding in common law courts are simple and precise, and not sufficiently flexible to accomplish the ends of justice in every possible case. And hence the origin of courts of equity; whose rules are more flexible; and adapted to supply the defects incident to proceedings under the rules of the common law. The very act relied upon by the counsel for Makin, is predicated upon the ground, that power exists to prevent injustice by staying proceedings at law. The act itself goes much further. It undertakes, in one part of it, to annul all judgments obtained against an institution in the condition of that of the plaintiffs. Whether such an act is within the scope of legislative power it is unnecessary here to inquire. It is certainly incident to a court of equity to stay proceedings at law, whenever it becomes necessary to do so in order to effectuate purposes within its legitimate jurisdiction. Although the act is silent on the subject of authority to issue injunctions, yet, as it is a power belonging to a court of equity ordinarily, and as the act distinctly recognizes our right, in cases of this kind, to proceed according to the rules of equity, I can have no doubt of our power to issue injunctions as prayed for in the bill.

Jane Gardner, one of the depositors, appears also as a defendant; and has filed a demurrer to the bill, denying the authority of the Court to take cognizance of the subject matter of the bill; and questioning the constitutionality of the aforesaid act, upon the ground that it is *ex post facto,* and tending to impair the obligation of a contract, which she contends she had made with the plaintiffs. She had, before its passage, commenced a suit to recover her deposit against the plaintiffs. I can but regard this defendant as having entertained an erroneous view of the subject. Her contract with the plaintiffs was only, that they would be faithful in the management of her funds, deposited with them as her trustees and

factors. Of the want of such fidelity no complaint is made; and the act does not propose to interfere with any such liability. If she had deposited her money with an individual, as a trustee, to be employed for her benefit, and he had by inevitable misfortune, or notwithstanding the exercise of due care on his part, lost it, she would be without any right of claim against him. . Her claim against these plaintiffs is merely equitable; and as such must be subject to the rules of equity. Although an action for money had and received will lie in such a case, as held in *Makin* v. *The Institution for Savings*, 19 Maine R. 128; in which a plaintiff may be allowed to recover such an amount as in equity and good conscience he is entitled to receive, that being a proceeding in the nature of a bill in equity, yet the appropriate remedy is in a court of equity, which has power to adjust all the cross equities between the parties, and ascertain such balance as may reasonably be recoverable.

The proceeding of the plaintiffs in this case is not in strictness an adversary suit against the depositors. It is rather a proceeding in their behalf, seeking for them the best means to secure a restoration to each and every of them, of what, in equity and good conscience, they should receive. In this view the plaintiffs may be regarded as the agents of the depositors, the *cestuis que trust* in this case, who have virtually, in their behalf, assented to the above named act, which seems to obviate any objection on account of its supposed interference with the rights of the depositors. This assent, on the part of the plaintiffs, will surely authorize the Court to adopt the provisions of the act, and to exercise the powers in equity as therein prescribed. Her demurrer therefore, should be overruled. And as her counsel has intimated, that in case the demurrer should be overruled, she had no further defence to make, the bill as to her may be taken *pro confesso.*

· Unless the plaintiffs had culpably mismanaged the funds of the institution, or were likely to do so, it would be unprecedented, it is true, without their consent, to disturb them in the discharge of their appropriate functions; and we should be authorized only to lend them our aid in furthering the objects

of the institution. But in this instance, they pray that a receiver may be appointed to receive and disburse the funds of the institution, as in and by said act seems to be directed; and that a commission may be instituted, as in the same act is contemplated; and it seems to me that those who have appeared as defendants should be enjoined from proceeding further at law. And on the whole, I cannot entertain a doubt of the suitableness of the course suggested to accomplish the ends proposed. But my associates, for whose discriminating powers I entertain great respect, have taken a different view of the matters in controversy; which led me to hesitate, and carefully to re-examine those taken by me, without being enabled to discover their fallacy. And a decree must be entered according to their decision.