John B. Brown *versus* Abraham Osgood, Jr.

As a general rule, a party cannot be permitted to disparage the credibility of a witness introduced by himself, by showing him to be generally unworthy of credibility. But the party calling the witness is not precluded from proving the truth of a particular fact by any other competent testimony, in direct contradiction to what such witness may have testified.

Nor is the right of a party to prove a fact to be different from the statement thereof by a witness introduced by him, restricted to cases where he is surprised by the testimony in that particular. And he may disprove a statement made in a deposition read by him, although he was present at the taking, and knew its contents.

Where a sale of the whole of his property by a father to his son, who gave back a negotiable note with a mortgage, was alleged to have been fraudulent as to the creditors of the former, it furnishes no cause for a new trial, if the presiding Judge, in his charge to the jury, at the trial, states as a circumstance for their consideration, that this note could not be reached by a creditor by the trustee process, without adverting to a remedy which is provided for the creditor by compelling the debtor to make disclosure under the poor debtor act, Rev. Stat. c. 148.

Writ of entry. The demandant claimed the land under the levy of an execution in his favor against Abraham Osgood, Sen'r, upon the premises, as the property of Osgood, made on February 13, 1844, the attachment upon the writ having been made in March, 1841.

The tenant claimed under the same Abraham Osgood, by virtue of a deed thereof from him, dated November 5, 1839, and recorded upon the same day.

The demandant contended that this deed was fraudulent and void, as to the creditors of Osgood, Sen'r. Much evidence was introduced by each party, which is set out in full in the exceptions filed by the tenant, he having also filed a motion for a new trial, because, as he alleged, the verdict for the demandant was against the evidence.

One part of the demandant's evidence is thus stated: —

The demandant then called from the hands of the counsel for the tenant the deposition of Abraham Osgood, taken by their client, which he read to the jury as his evidence.

The eighth interrogatory on the part of the tenant, Abraham Osgood, Jr. was: — "Was or not the conveyance made by you to Abraham Osgood, Jr. of Nov. 5, 1839, a *bona fide* conveyance, and for a valuable consideration."

The answer of the deponent was: — "It was."

The counsel for the defendant, on the evidence, contended, that the plaintiff having produced in evidence the deposition of Abraham Osgood, and made him his witness, and thereby negatived all fraud, either actually intended or legal fraud, was estopped from setting up fraud in the sale and conveyance from Abraham Osgood to Abraham Osgood, Jr. as he could not be permitted by law to discredit his own witness, or show that he had testified falsely, and as the said Abraham Osgood had testified positively and unequivocally that the sale and conveyance to his son, Abraham Osgood, Jr. was made in good faith, for a full and fair consideration, which was actually paid, and that the sale was made without any intent to defeat or delay his creditors, the plaintiff was bound by it.

That fraud consisting in the intention with which the sale and conveyance was made, the witness could not be mistaken as to his motives in making the sale and conveyance to his son, Abraham Osgood, Jr. the defendant, and that there was no room for the jury to find that the witness was mistaken.

That the case clearly showed, that Abraham Osgood did not part with his estate, but had a valuable estate in his hands, in the note and mortgage from the son of more than $2000, which was double of all he owed, exclusive of the debts due in Boston, which were secured ; and which property appeared to be in him by the public records of the county, and which property could be reached by legal process, inasmuch as his creditors could compel him to disclose it, and might elect to take it on a fair and just appraisement for the payment of their debts.

That the whole evidence showed that the son, Abraham Osgood, Jr. was able to make the purchase, and did pay for the property by the plaintiff's own showing.

And that the presumption of fraud arising out of the connection or relation of father and son, and from the sale and conveyance from the father to the son of all his property, was conclusively rebutted by the plaintiff's own positive proof to the contrary.

And that the presumption which might arise from the immediate sale of the goods purchased in Boston, that the father intended to delay or defeat his Boston creditors, was rebutted by the fact that his Boston creditors were abundantly secured to their satisfaction.

And that it was not on the credit of the goods purchased in Boston, that the debts due in Portland were contracted, as all the debts due in Portland were contracted long before the purchase of the goods in Boston.

And that the fact that the defendant was permitted to remain undisturbed in the open possession of all the property, for years, under the eye of the plaintiff, and the other creditors of Abraham Osgood, was strong corroborative proof of the fairness of the purchase by the son from the father, and that the plaintiff himself was satisfied of the fairness and integrity of the transaction.

The exceptions state, that at the trial, before WHITMAN C. J. the Judge in his remarks to the jury, after stating the several conveyances, charged them, that if the conveyance of the land in dispute, made by Abraham Osgood, Sen'r, to Abraham Osgood, Jr., was made with intention to delay or defraud the creditors of Abraham, Sen'r, or interfere with them in the collection of their debts, the conveyance was void, and the plaintiff, having shown a regular levy on the same, was entitled to recover; that the conduct of a party was oftentimes much stronger evidence of such intentions than their declarations, and more to be relied on by the jury; that beyond all question it had been proved in the case, that the father at the time was deeply in debt, that the defendant being the son of the

grantor, Abraham, Sen'r, they would judge whether there was any reasonable ground to doubt that there existed a great confidence between them ; or to doubt, that if the father intended a fraud, the son was conusant of it ; that so far as it appears, at the time of the conveyance the father conveyed to the son all the property he possessed, which could be attached ; that having taken a negotiable note from the son of $2000, and upwards, that property could not be reached by the trustee process ; that the sale of the property was immediately after the large purchase of the goods in Boston ; that they would remember that although the grantor, Abraham, Sen'r, received from his son a note for over $2000, yet, so far as appeared, not one cent of any debt, except the Boston ones had been paid ; that however fraudulent may have been the intentions of the father, yet if the son did not participate in the fraudulent intention, the sale would be good ; and that they would therefore inquire whether or not the son did thus participate ; and if they did not find him thus to have participated, they would find for him.

The counsel for the defendant then requested the Judge to call the attention of the jury to the deposition of Abraham Osgood, and to instruct the jury, that inasmuch as the plaintiff had made use of and read the deposition of Abraham Osgood to the jury, and thereby made him his witness, and the said Abraham Osgood had positively denied all fraud, and any intent to defraud or delay his creditors, the plaintiff was not at liberty to deny or contradict the testimony of his own witness ; and therefore that the jury ought to take the testimony of Abraham Osgood as true, on the point that he made the conveyance in good faith, and with no design to delay or defraud his creditors.

On which request the Judge stated to the jury, that it was true the plaintiff could not impeach or contradict his witness, but he might show that he, the witness, was mistaken, and the jury had a right so to presume, if they were satisfied of the fact.

The jury returned a verdict for the demandant, and the tenant filed exceptions.

*Fessenden, Deblois & Fessenden,* for the tenant, argued in
t of the legal propositions taken at the trial; and also
contended that the verdict ought to be set aside on the motion
for a new trial.   They cited 1 Greenl. Ev. 442; Buller's N. P.
297; Swift's Ev. 143; Peake's Ev. 135; 3 B. & Cr. 746;
2 Stark. R. 296; 1 Stark. Ev. 147; 8 Bingh. 57; 1 Phil. Ev.
213; 2 Campb. 256; 4 B. & Cr. 25; 1 W. Bl. 365; 4 Barn.
& Ad. 193; 5 Wend. 301; 12 Wend. 105; 4 Pick. 179.

*Rand,* for the defendant, said that he did not contend, that
a party has the right to discredit a witness, called by him, by
showing his general character for truth to be bad.   All that
was necessary to establish in the present case was this; that
where a party has read a deposition, he is not estopped from
showing by other evidence, that a fact stated therein is errone-
ously or untruly stated.   Thus far, the law is well settled.
1 Greenl. Ev. § 443, and cases cited in the note.   The only
objection to the rulings of the presiding Judge on this point is,
that they were too favorable to the tenant.   There is no dis-
tinction between testimony in a deposition and from a witness.
If it was necessary to show, that the party was taken by sur-
prise, in order to introduce such testimony, it would exclude it
entirely, in the case of depositions.   The best authorities are
opposed to any such distinction.   The controversy between
the parties at the trial, was as to the fact, whether the convey-
ance was or was not fraudulent.   It was no more an inquiry
into the motives of the parties to that fraud, than in every
other question of that description.   Whether the conveyance
is fraudulent, or not, is always a question of fact for the jury.

The opinion of the Court was drawn up by

WHITMAN C. J. — The plaintiff's claim of title depends
upon a levy upon the demanded premises as the property of
Abraham Osgood, Sen'r; and that of the defendant on a deed
thereof made to him anterior to the levy by the said Abraham,
Sen'r.   The plaintiff contends, that the deed so made was in-
tended to delay or defraud the creditors of the grantor therein,
of whom the plaintiff was one; and that the same is therefore

inoperative against him. Much evidence, at the trial, was introduced on the one side, and on the other, in reference to this point, as is fully shown by the bill of exceptions, with a view to support a motion filed by the defendant for a new trial, upon the grounds therein set forth. In the argument of the defendant's counsel, however, the reliance for obtaining a new trial seems to have been placed, almost altogether upon the matter arising under the bill of exceptions. Our attention, therefore, will principally be confined to the consideration thereof.

It appears that the deposition of said Abraham, Sen'r, had been taken by the defendant to show, that his conveyance to the defendant was *bona fide*, and for a valuable consideration ; at the taking of which the plaintiff was present, and put cross-interrogatories, the answers to which, he deemed important to the maintenance of his action. At the trial the defendant declined using the deposition. The plaintiff thereupon called for it, and agreeing to use it as if taken by him, no objection was made to his doing so, and he read it as evidence to the jury. In it the witness appeared to have been asked by the defendant, whether the conveyance was made by him *bona fide*, and for a valuable consideration or not; and he answered in the affirmative. The counsel for the defendant insisted, that this, being in a deposition, used by the plaintiff as if taken by him, was conclusive evidence, that such was the fact ; that, having made the witness his own, it was not competent for him to prove that the fact was otherwise ; and more especially so in a case in which the question, as to the intention of the witness, was involved, concerning which no one could have positive knowledge but himself ; and requested the Court so to instruct the jury, which was declined. The counsel now argue that the Court erred in not complying with their request.

It is undoubtedly a general rule that a party should not be permitted to disparage the credibility of a witness, introduced by himself, by showing him to be generally unworthy of credibility. But to this, as to most other general rules, there are some exceptions, as stated in Greenl. on Ev. vol. 1, § 443 ; and he, moreover, adds that, "it is exceedingly clear, that the party

calling a witness is not precluded from proving the truth of a particular fact, by any other competent testimony, in direct contradiction to what such witness may have testified ; and this, not only when it appears that the witness was innocently mistaken, but even where the evidence may collaterally have the effect of showing, that he was generally unworthy of belief." And the cases cited under the section, fully sustain the position.

But the counsel insist, that this can be done only when the party is surprised by the testimony of his witness ; that if he introduces him, well knowing that his testimony will be adverse to his interest, he will be concluded by it ; and, as an authority in support of this distinction, they cite and rely upon the case of *Alexander* v. *Gibson*, 2 Campb. 555 ; and the marginal abstract of the reporter is to that effect ; but the Court make no mention of any such qualification of the rule. The case, however, is in point for the defendant to the effect, that a party shall not be allowed to avail himself of the testimony of his witness in part, and repudiate the residue. But this was a decision at *nisi prius ;* and is expressly overruled by the whole Court in this particular, in the case of *Bradley* v. *Ricardo,* 8 Bing. 57 ; and the rule, as laid down in Buller's Nisi Prius, was recognized as the settled law ; and without reference to the matter of surprise. A witness may be called to testify to a great number of facts essential to the interest of the party calling him, who may know, that, on cross-examination or voluntarily, he, from mistaken impression, or from some other cause, will testify incorrectly as to some particular facts. Must he forbear to call him in such case ? Such a rule would be productive of no advantage in legal proceedings, but would often tend to the suppression of the truth. Every days experience teaches, that witnesses may testify incorrectly as to some one, out of a great number of facts, accompanying a transaction ; whether from misapprehension or a design to favor the other party, it may be very difficult, if not impossible, to determine. At the same time the party producing him may have it in his power to show the incorrectness of the testimony

in such particulars. Surely, in charity he may be allowed to suppose his witness mistaken, and to disprove such statement, though it may tend even to show that the witness' credit is not entirely free from suspicion : and, besides, when found to be stating facts against the interest of the party calling him, which can be proved to be untrue, should tend to fortify his credit as to those which he may state promotive of the interest of such party, as it would thereby be rendered evident, that such tes- timony was not the result of preconcert or of partiality. Accordingly, Mr. Justice Putnam, in *Brown* v. *Bellows*, 4 Pick. 179, in delivering the opinion of the Court, lays down the law to be, that " a party is not obliged to receive, as unimpeachable truth, every thing which a witness, previously called by him, may swear to ;" and that, " if the witness has been false or mistaken in his testimony, he (the party calling him,) may prove the truth by others." Neither in this case, nor in *Bradley* v. *Ricardo,* before cited, is there a word about surprise. It may well be presumed that no party would introduce a witness to prove a single fact, with full knowledge that he would testify to the contrary.

But, as to the matter of surprise, it is believed to be referable, legitimately, only, to the question whether, when a party has produced a witness, who testifies adversely, he shall be allowed to show that the witness had, on a former occasion, made a different statement. There may be good reason for holding, that, unless the party in such case can make it apparent, that he had good reason to suppose the witness would have testified differently, he should not be permitted to show that the witness had made a different statement at another time. It has been doubted, whether a party should be permitted to do so at all, in reference to his own witness ; but Mr. Greenleaf, (vol. 1, § 444,) thinks the weight of authority is in favor of its admissibility. And the case of *Cowder & al.* v. *Reynolds,* 12 Serg. & R. 281, supports it. A difficulty, however, in such cases seems to present itself, as an issue is made, which the Court must decide, viz. whether the party is surprised by the testimony of his witness. If the Court can-

not be satisfied that he is, he cannot produce the evidence of a different statement at another time.    But the difficulty may not be greater, in such case, than in many others, in which the Court may be called upon to consider of the admissibility of testimony.    But we need not, in the case before us, decide upon the admissibility of such a rule, as it was not attempted to affect the credit of the witness in any such manner.    The question is only glanced at here by way of showing, that, as to the matter of surprise, it is not applicable to the case before us.

And there is another view of this case, which, if it were necessary, might be considered as relieving it from the difficulty, upon which the argument for the defendant is in a great measure based.    There can be no question, but that, a party introducing a witness may show, in reference to some one fact, to which he may testify, that he may have been innocently mistaken.    It will not be contended, that the witness in this case is versed in the law.    When he says his sale was *bona fide*, it may readily be believed that he was ignorant of the legal acceptation of the terms used by him in reference to a sale where the rights of his creditors might be concerned.    It often happens that individuals think, that they are doing a very meritorious act by putting their property into a condition, that shall prevent it from being attached.    They may fancy that they shall, thereby, avoid a sacrifice consequent upon the levy of a *fieri facias*, and be enabled the better, ultimately, to pay their debts, or to make an equal distribution of their property among their creditors ; and this they would call acting *bona fide* ; and to one, unlearned in the law, it might seem to be so. But such contrivances, by a person in debt, are deemed in law to be fraudulent; for creditors are not only entitled to have the opportunity of attaching the property of their debtors, but all contrivances to delay the collection of debts are unlawful. The plaintiff, therefore, might well be permitted, in this case, to show that his witness labored under a mistake, in saying that the sale was *bona fide*.

One other ground is relied upon by the defendant's counsel in argument.    It is, that the Judge erred in charging the jury,

that the property of the debtor, as it was by the sale converted into a debt due to him, by a negotiable security, could not be reached by a trustee process, without adverting to a remedy, which is provided for the creditor, by compelling the debtor to make disclosure, under the Rev. Stat. c. 148, § 29. But the security so afforded is both remote and contingent and altogether precarious. On commencing his action against his debtor a creditor acquires no lien. He must first obtain his judgment, and then take out his execution, and arrest his debtor, who, by giving a bond, will have six months more, in which he may make a disclosure ; or at the end of it go into prison without disclosing. In all this time the creditor is without security, and the debtor at liberty to squander or dispose of his property at pleasure. To consider this as indicating the absence of design to delay or defraud a creditor would be contrary to the teachings of every days experience and observation ; and should rather tend to confirm the presumption, arising from other circumstances, to the contrary. There could therefore be no error in omitting to charge the jury as to any such matter as tending to support the defence.

From the evidence disclosed, we are unable to come to the conclusion that the verdict was against evidence, or even against the weight of evidence.

*Exceptions and motion for a new trial overruled.*