MINDWELL STOVER *vs.* MARY L. POOLE *et al.*

York.   Decided February 25, 1877.

67   217
91    76

### Equity.

In a suit in equity relief can only be granted in accordance with some one or more allegations in the bill.

A court of equity will not set aside a voluntary conveyance as between the

parties, unless upon the ground of fraud actual or constructive.

Nor is a mistake in law sufficient for that purpose, unless it occurs under such circumstances that fraud, imposition or improper influence may be inferred or to prevent intolerable injustice; and the mistake must appear from the strongest and most satisfactory proof.

To obtain relief on the ground of mistake, it must appear in the bill what it is that is relied upon; and the proof must follow the allegation, so that the court may know precisely what is asked and what is the relief sought.

BILL IN EQUITY, to remove cloud upon title.

The bill alleges that the plaintiff, the widow of Obadiah Stover, in the spring of 1868, was and ever since has been possessed in her own right, in fee simple, of a farm in York in the county of York, where she has resided for about fifty-seven years; that her daughter and daughter's husband, these defendants, claimed title in said land by virtue of a deed which they claim to have had from the plaintiff, September 16, 1868; that the oratrix never signed, sealed, executed and delivered any such deed to her knowledge; that the first she heard of it was about a year before her husband's death, when her son Edward told his father that Mark, the defendant, had such a deed; that the father laughed at him and said that he had never given any such deed; that the oratrix knew that she never gave any such deed; that after her husband's death, she was shown a bill of sale of the personal property to Mary, the defendant, in consideration of $1100; that neither she nor her husband ever received any money from her daughter; she knew she had never signed or made any such paper. On inquiry she was informed of the following facts: That when sick in 1868, and under the doctor's charge and unconscious, under the influence of opium depriving her of all knowledge of what was happening, a certain paper was brought into the house by Mark Poole, and her husband was asked to sign; he asked what it was; Mark said it is no matter, you sign; and he signed the deed without reading it or hearing it read and without any knowledge of its contents. After he signed it, it was taken to the bed and your oratrix was held up in bed, and unconscious of what she was doing, Mark Poole was standing by the side of her bed, and her signature was thus obtained without her knowledge and contrary to her wish and desire, without any reading of the paper in her presence and with-

out any knowledge on her part of its contents. Mark Poole thus obtained the pretended deed of real estate and bill of sale of personal property to his wife, fraudulently and without the knowledge or consent of the oratrix. The bill states that the oratrix is desirous to sell lots of land to various parties, the same being desirable for summer residences, and that by reason of the fraudulent deed she cannot sell; it closes with a prayer that the pretended deed and cloud upon her title may be set aside and removed as fraudulent and void.

The answer was in substance that the title to the real estate came from a brother of the female defendant, who on his death-bed and in contemplation of death gave a deed of it to his mother with the understanding and request that it be conveyed, at or before her death, to his sister and her husband, the defendants; that her mother being confined to her bed with a dislocated hip, but in full possession of her mental powers, voluntarily made and delivered the deed in question; that both the deed and the bill of sale were freely, fully, properly and understandingly executed and delivered by said Mindwell, who then knew, whether she now remembers or not, the exact nature, contents, purport and effect of each of said instruments, etc.

The deed in question under which the defendants claim, was dated September 16, 1868, signed, Obadiah Stover and Mindwell Stover, witnessed, acknowledged and recorded; and omitting formal commencement, close, description of premises and clause of qualified warranty, was of the following tenor :

I, Obadiah Stover and Mindwell Stover, wife of Obadiah Stover, both of York, in the county of York and state of Maine, in consideration of the sum of two thousand dollars paid by Mary L. Poole of York in said county, the receipt whereof we do hereby acknowledge, do hereby remise, release, bargain, sell and convey, and forever quit claim unto the said Mary L. Poole, her heirs and assigns forever, all our right, title and interest in and to a certain tract of tillage, pasture and wood land lying in said York and being our homestead farm, and being the same which we now occupy and bounded as follows. . . . . . meaning to convey all our real estate which we now own in said York, containing one hun-

dred and twenty acres more or less, with the buildings thereon, reserving to ourselves the use and improvement of the same during our natural lives, being the same conveyed by ¦Samuel H. Stover to Mindwell Stover per deed dated April 23, 1867, recorded in the York registry, book 303, page 373. To have and to hold the same with all the privileges and appurtenances thereunto belonging to the said Mary L. Poole during her natural life and then to her husband Mark Poole, their heirs and assigns forever.

At the May term, 1876, issues were framed for the jury which they returned with the following answers :

1. Was the said deed and bill of sale freely and voluntarily executed and delivered by Mindwell Stover, and was she at the time of the execution and delivery thereof of sound mind and legal capacity to convey her estate and property ? Answer, yes.

2. Were the deed and bill of sale procured by any fraudulent practices of the respondents or either of them or any person in their behalf ? Answer, no.

3. Were the said deed and bill of sale and each of them executed by said Mindwell Stover with a knowledge of their contents and purport ? Answer, yes.

4. Was said deed freely and voluntarily executed and delivered by the said Mindwell knowing and understanding its contents and legal effects ? Answer, no.

5. Was the said bill of sale freely and voluntarily executed and delivered by the said Mindwell knowing and understanding its contents and legal effect ? Answer, no.

Other facts, and the points raised by counsel appear in the opinion.

*S. H. Goodall*, for the plaintiff.

*N. Hobbs*, for the defendants.

DANFORTH, J. This is a bill in equity in which the plaintiff alleges that she is the absolute owner of certain land and personal property therein described, and that the defendants claim to have a deed and bill of sale of the same executed and delivered by her to them. This execution and delivery she denies, setting out substantially that, if they have any such instruments of conveyance they

were obtained by fraud and executed and delivered by her unknowingly and in a state of mind when she was unable to appreciate or in any degree understand what she was doing. The prayer of her bill is that upon these grounds the conveyances may be set aside as a cloud upon her title.

The defendants answer severally, claiming that they have a deed of the land described, not absolute, but subject to a life estate in the plaintiff, and a bill of sale of the personal property running to the female defendant. They further deny all the allegations of fraud and improper influence, as well as the plaintiff's want of knowledge, asserting that both instruments were executed and delivered voluntarily with full knowledge and understanding of their contents and legal effect, to carry out an intention previously formed and without any influence or solicitation on their behalf.

The issues thus raised have been submitted to a jury and a verdict rendered, sustained as we think by the testimony, negativing all suggestions of fraud and improper influences, and finding that both instruments were executed and delivered voluntarily, that at the time the grantor "was of sound mind and legal capacity to convey her property," and that she had a "knowledge of their contents and purport."

This verdict sustained as it is by the evidence would seem to dispose of all the issues fairly raised by the bill and answers, and upon the familiar principle that the plaintiff can only stand upon the allegations in the bill the suit must fail.

But the plaintiff contends that the defendants have by their answers raised another and a different issue upon which the verdict is in her favor, and upon this she still claims to have her prayer allowed. Apparently conceding that a decree upon this last issue would not be founded upon any allegation in the bill, the counsel claims it upon the issue offered by the answer, that she understood the legal effect of her conveyance. The reasoning upon which this is sought to be established is hardly sound. It is true that the allegations in a bill as in a declaration may be denied or avoided by other facts. In other words, in equity as well as in law, the pleader may confess and avoid. By so doing the fact directly in issue before the jury may not be the fact alleged in the

bill, but the former must have a direct bearing upon the latter as tending to show that it cannot, even if true, entitle the plaintiff to recover. If it fail in this it is not pertinent to the case, and if established is not a defense, while if it is pertinent, it is a defense, only because it shows that the facts upon which the plaintiff relies cannot avail. Hence in any suit, whatever may be the pleadings, the judgment must depend upon the effect of the plaintiff's allegations and be in accordance with them.

But if we are permitted to leave the bill and wander over the whole domain of fact and law developed by the case, the plaintiff will be in no better condition. It is claimed that the conveyance is without pecuniary consideration and such is probably the fact. We assume then if it is to stand it is as a gift or advancement to a daughter and her husband. No question is raised as to the rights of creditors, subsequent purchasers, or any third persons, but only such as may arise between a donor and donee.

In such cases equity will not ordinarily interfere but, in the absence of fraud, leave the parties as it found them. If the gift has not been perfected it will not reform or enforce the contract so that it may be, whatever may be the agreement of the parties ; if it has been perfected it will not restore it. In 1 White and Tudor's Lead. Cas. 324, the rule is thus laid down. "A court of equity will not set aside a voluntary deed or agreement not obtained by fraud, or against public policy, even if it be such as, according to the principles before laid down, it will not carry into effect. Equity stands neutral, and invariably follows the rule thus quaintly laid down in an old case, "that if a man will improvidently bind himself up by a voluntary deed, and not reserve a liberty to himself by a power of revocation, a court of equity will not loose the fetters he hath put upon himself, but he must lie down under his own folly." Numerous cases are cited in support of this rule, and it is believed to be well established.

In the case at bar, by the execution and delivery of the conveyances, the gift was completed, and nothing left to be done "to carry it into effect." The papers were executed voluntarily and of the plaintiff's own motion. There is nothing in the transaction which by any possibility can be construed as against public policy or so

far as appears as being impolitic as between a mother and daughter. The testimony not only fails utterly to show any fraud or improper influence, but such is negatived by the jury. On the other hand the verdict finds affirmatively that the conveyances were executed voluntarily and with a full understanding of their contents and purport. It would therefore seem to be clear that so far as the facts go the plaintiff has failed to show any ground for relief.

But it is claimed that at the time the conveyances were made the grantor did not understand their "legal effect" and the jury have so found, and that therefore she is entitled to relief because she acted under a mistake of law.

The general rule above referred to would seem to exclude any relief upon this ground, and we think it is applicable here as well as in other respects. That some cases may be found which are apparent exceptions to this rule may be true, but the decided weight of authority we think is in favor of its application to mistakes in the law. It is undoubtedly true that where both parties to a contract labor under the same mistake of the law, so that the written instrument does not express the meaning of the parties, a court of equity will upon a proper bill reform it. Such is the case of *Canedy* v. *Marcy*, 13 Gray, 373, and other cases cited by the plaintiff's counsel.

Even this however will be done only upon the strongest and most satisfactory proof. *Sawyer* v. *Hovey*, 3 Allen, 331. But when the mistake is that of one party only, a different and more stringent rule prevails. In *Bank of U. S.* v. *Daniel*, 12 Pet. 32; also 12 Curtis, 618, 626, it was held that "a mistake, or ignorance of the law, forms no ground of relief from contracts fairly entered into, with full knowledge of the facts, under circumstances raising no presumption of fraud, imposition, or undue advantage taken." In *Hunt* v. *Rousmaniere's administrator*, 1 Pet. 1, reported also in 7 Curtis, 419, 426, a similar doctrine is laid down.

In 1 Story's Eq. Jur. (9 ed.) § 138 *i*, the principles applicable to a mistake in law are thus summed up. "But where the mistake is of so fundamental a character that the minds of the parties have never in fact met; or where an unconscionable advantage

has been gained by mere mistake or misapprehension, and there was no gross negligence on the part of the plaintiff either in falling into the error or in not sooner claiming redress, and no intervening rights have accrued, and the parties may still be placed *in statu quo*, equity will interfere in its discretion to prevent intolerable injustice."

If, as already seen, equity will not interfere to reform or set aside a voluntary conveyance except in case of fraud actual or constructive, there would seem to be no valid reason why the principles thus laid down as applicable to mistakes in law should not also be applied to deeds of gift, especially those given by an aged mother to a daughter. Making such an application to this case, on what ground can we say that there has been any fraud or imposition or improper influence which has led to such a mistake? The existence of these in any degree has been negatived. It does not appear that any unconscionable advantage has been obtained, but as far as the testimony shows the conveyance is not an unusual one, or one which we can say is improper.

Nor can we say that the mistake is of so fundamental a character that the instruments fail utterly to carry out the intention of the grantors. There is no pretense that the husband did not fully understand the nature and effect of the conveyances. The jury have found that the plaintiff understood their contents and purport. From the nature of the instruments of conveyance she must necessarily have known that she was parting with some interest in her property and that the grantees were receiving such interest.

But it is said that the plaintiff did not understand the legal effect of the instrument and the jury have so found. This may be true; but the testimony upon which the finding is based can hardly be said to be very strong or satisfactory. It is very much weakened by another part of the verdict in which it is found that she executed each with "a knowledge of their contents and purport."

But if this were so, and a simple mistake of the law sufficient to authorize a court of equity to rectify the mistake, there is still in this case an insuperable difficulty. It is not easy to correct a mistake of which we have no knowledge. It is not enough to say the plaintiff did not understand the legal effect of her act. She may

not now have that knowledge and from aught that appears in the case the instruments may be the best possible to carry out her intention and purpose formed at the time. If otherwise, if in any respect that intention has not been carried out, we are left in entire ignorance as to how or wherein the failure has occurred. The bill gives us no light, the testimony or verdict gives us no aid. It is incredible considering the nature of the instruments in question and the fact that she understood their contents and purport, that she did not know and fully comprehend that she was conveying some interest in her property to one or both of the grantees.

Under such circumstances no rule in equity will allow the instruments to be set aside, for in that case her intention deliberately formed in some part at least would be defeated. They cannot be changed or modified; for we have no knowledge as to the changes required, whether as to the estate granted or the persons to whom it is granted. If it had appeared by the proper allegations and proof that a will had been intended, but through misapprehension a grant had been executed instead, we will not say that such a mistake might not be so fundamental as to authorize and require a correction. But nothing of this kind appears. The allegation is that no instrument was intended ; the proof is that the two were executed understandingly and without fraud. If then we should make any decree favorable to the plaintiff we could have no assurance that it would correct any mistake which she may have fallen into.                                   *Bill dismissed with costs.*

APPLETON, C. J., DICKERSON, BARROWS, VIRGIN and LIBBEY, JJ., concurred.