STATE OF MAINE                                     SUPERIOR COURT
HANCOCK, ss.                                       DKT. NO. CV-15-060

WCP MAINE LOAN HOLDINGS, LLC,    )
                                 )
        Plaintiff,               )
                                 )
v.                               )        **ORDER**
                                 )
KARL S. NORBERG, et al.,         )
                                 )
        Defendants.              )

Plaintiff WCP Maine Loan Holdings, LLC (WCP) filed the operative Motion to Strike Jury

Demand as to Plaintiff's Claims on March 2, 2018. In this lawsuit filed under the Maine Uniform

Fraudulent Transfer Act (UFTA), 14 M.R.S. §§ 3571-3582 (2017), WCP argues that it advances

solely equitable claims and seeks solely equitable relief. Because claims equitable in nature are

tried to a court and not a jury, WCP contends, Defendant is not entitled to a jury trial on this portion

of the case.[1] Defendant argues in response that there is a history of fraudulent transfer cases being

tried to juries which means Article 1, Section 20 of the Maine Constitution preserves his right to

have the claims tried to a jury.[2]

This Court held a hearing on the Motion on September 28, 2018. The Court has reviewed

the parties' briefs, considered their respective arguments at hearing, and researched Massachusetts

and Maine cases on fraudulent transfers of real property dating back to both before and after the

adoption of Maine's Constitution in 1820. Based on the following analysis, the Court grants

---

[1] Though inconsequential to the resolution of this Motion, the Court notes that WCP alleged a series of fraudulent transfers involving not just Karl Norberg, but also Hillman Norberg, the Hillman Mather Adams Norberg Trust, the Hillman Norberg Trust, and Ellen Hancock as trustee of the aforementioned trusts. Only Karl Norberg file an opposition to the Motion to Strike.

[2] Counterclaim-Plaintiffs Pam Gleichman and Wendy Fanjoy joined Karl Norberg's Opposition to the Motion to Strike. However, Gleichman and Fanjoy are not named defendants in Plaintiff's Complaint asserting the UFTA claims. Thus, their position asserting a right to a jury trial on Plaintiff's UFTA claims against the various Norberg-related defendants is irrelevant because Plaintiff alleged no UFTA claims against Gleichman and Fanjoy.

1

Plaintiff's Motion.

## BACKGROUND

The allegations in the Complaint, which the Court accepts solely for the purpose of describing the factual circumstances of the case in this Order, establish the following pertinent backdrop:

In 1999, Defendant Karl Norberg acquired title to certain real estate in Bar Harbor, Maine.[3] (Compl. ¶ 7.) On August 27, 2010, at a time when Karl Norberg still held title to the Bar Harbor property, Machias Savings Bank filed two complaints (one in Ellsworth District Court and one in Cumberland County Superior Court) against Karl Norberg. (Compl. ¶¶ 8-9.) Each complaint sought to recover judgment from Karl Norberg for amounts due on separate promissory notes, one for $5,175,000 and one for $1,000,000. (Compl. ¶¶ 8-9.) Machias Savings Bank also sought to foreclose on separate mortgages securing the distinct promissory notes. (Compl. ¶¶ 8-9.) After each complaint was filed, Machias Savings Bank assigned the above-referenced notes and mortgages securing the same to WCP. (Compl. ¶ 10.) WCP was substituted for Machias Savings Bank as plaintiff in both the Ellsworth action and Cumberland County action. (Compl. ¶ 10.)

On March 22, 2012, the Ellsworth District Court granted judgment against Karl Norberg in favor of WCP and authorized WCP to sell the property securing the note in that case at a foreclosure auction. (Compl. ¶ 11.) Shortly thereafter, on April 12, 2012, the Cumberland County Superior Court granted judgment against Karl Norberg in favor of WCP and authorized WCP to

---

[3] Though not specifically stated in the Complaint, it does not appear that the Bar Harbor property which Karl Norberg allegedly conveyed fraudulently secured either of the promissory notes upon which WCP obtained judgments against Karl Norberg in 2012. As alleged in Karl Norberg's Counterclaim, there was a house and an adjacent lodge on the property; only the house had a mortgage on it to secure one of the promissory notes. (Def.'s Countercl. ¶¶ 5-7.) There seems to be some dispute as to whether the foreclosure judgment covered the house *and* the lodge, along with other portions of the property. (Def.'s Countercl. ¶ 23.)

2

sell the property securing the subject note at a foreclosure auction. (Compl. ¶ 12.) Following foreclosure auctions in August 2012, WCP was left with a deficiency greater than $2,600,000 under the judgment from the Ellsworth District Court and a deficiency greater than $350,000 under the judgment from the Cumberland County Superior Court. (Compl. ¶¶ 13-14.) Before these two deficiencies had been paid and satisfied, on March 26, 2013, Karl Norberg conveyed title to the Bar Harbor property to Defendant HN Trust for no consideration. (Compl. ¶¶ 15.)

Then, within approximately a week's span in June 2013, both the Ellsworth District Court and Cumberland County Superior Court issued to WCP deficiency judgments against Karl Norberg. (Compl. ¶¶ 17-18.) Several months thereafter, on March 17, 2014, Defendant HN Trust conveyed the Bar Harbor property to Defendant Hillman Norberg, Karl Norberg's son, for no consideration. (Compl. ¶¶ 6, 19.) Two days later, Hillman Norberg conveyed the Bar Harbor property to Defendant HMAN Trust. (Compl. ¶ 21.) Even though Karl Norberg purported to convey his interest in the Bar Harbor property, he has continued to exercise dominion and control over that property. (Compl. ¶ 23.)

WCP's Complaint is a two-count complaint in which the first count alleges a fraudulent transfer under 14 M.R.S. § 3575(1)(A), which applies to a debtor who makes a transfer "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor . . . ." (Compl. 5.) The second count alleges a fraudulent transfer under 14 M.R.S. § 3576(1), which makes fraudulent a transfer as to a "creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." (Compl. 6.) The relief sought by WCP includes, among other requests, a request for a declaration by the Court stating that all

3

referenced transfers be null and void, an order conveying the Bar Harbor property back to Karl Norberg, an injunction preventing any further disposition of the property, the appointment of a receiver to take charge of the property, an order stating that WCP may levy execution upon the property, and damages not to exceed double the value of the property. (Compl. 7.)

## DISCUSSION

Maine's Constitution provides that, "[i]n all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury, except in cases where it has heretofore been otherwise practiced . . . ." Me. Const. art. I, § 20. Though that provision has existed since the adoption of Maine's Constitution, the Law Court has not interpreted it consistently. *See generally* Carolyn A. Liegner, *A Modern Look at the Right to a Civil Jury Trial Under the Maine Constitution*, 69 Me. L. Rev. 169 (2017). Despite the inconsistent interpretation of the provision over time, the Law Court settled on an interpretation that is meant to give full weight to the Maine Constitution's preference for jury trials:

> Our practice now is to find that there is such a right unless it is affirmatively shown that a jury trial was unavailable in such a case in 1820. If the identical cause of action existed in 1820, the answer of course is easy. The analysis, however, is not limited to such obvious cases. We also consider suits of the same general nature in 1820 to determine whether it was otherwise practiced at that time.

*N. Sch. Congregate Hous. v. Merrithew*, 558 A.2d 1189, 1190 (Me. 1989) (citations omitted) (quotation marks omitted).[4] As the Law Court has previously explained, "[o]ur constitutional

---

[4] The Law Court's interpretive roadmap to analyzing whether a jury trial right under Article I, Section 20 exists for certain claims in Maine differs from the Supreme Court's guidance on when a jury trial right exists under the Seventh Amendment: "[u]nlike the Seventh Amendment, which has been interpreted to refer exclusively to a jury trial right under English common law, the right to a jury trial under Article I, Section 20 relies on historical state law, as nearly thirty years of Massachusetts law existed at the time of the ratification of the Maine Constitution." Liegner, *supra*, at 176-77 (footnotes omitted). The Seventh Amendment to the U.S. Constitution does not apply to the states. That being said, "the roots of the English common law system still influence [the] scope [of the right to a jury trial under Article I, Section 20]. For example, . . . the right to a civil jury trial is a common law right, which is not extended to suits at equity."

4

provision safeguards the right to a jury trial on all legal claims." *Cyr v. Cote*, 396 A.2d 1013, 1016 (Me. 1979). "Where a plaintiff seeks damages as full compensation for an injury, the claim is legal and the plaintiff is entitled to a jury trial." *DesMarais v. Desjardins*, 664 A.2d 840, 844 (Me. 1995) (citation omitted) (quotation marks omitted). On the other hand, equitable claims are "those requiring creative, injunctive, or unique action by the court . . . ." *Thermos Co. v. Spence*, 1999 ME 129, ¶ 18, 735 A.2d 484.

"As to equitable issues, viz., 'cases where it has heretofore been otherwise practiced', no jury trial right exists by virtue of art. I, § 20, although an advisory jury or trial by consent is available . . . ." *Cyr*, 396 A.2d at 1016. In other words, at the time of the adoption of Maine's Constitution, equitable claims were not entitled to jury trials. Thus, the question becomes, when is a claim legal and when is it equitable?[5] The Law Court has helpfully provided that, "[t]o determine the often elusive question of whether a claim is legal or equitable, there must be an appraisal of the basic nature of the issue presented, including the relief sought." *Id.*

There is no doubt that a claim to avoid fraudulent transfers existed in 1820, whether involving fraudulent transfers of money[6] or real property. In other words, this is not a new claim that did not exist when Maine adopted its Constitution, unlike in *Portland v. De Paolo*, 531 A.2d 669 (Me. 1987). Indeed, such a claim dates back to 16th century England when Parliament enacted

---

*Id.* Thus, the Court has found enlightening some federal discussion of the jury trial right under the Seventh Amendment in fraudulent-transfer-of-land cases because they touch upon the practice of English common law and equity courts before and around the time the U.S. Constitution was ratified.

[5] Generally, cases sounding in fraud are subject to the Superior Court's equitable jurisdiction, 14 M.R.S. § 6051(4) (2017), but they are not always purely equitable, *Cyr*, 396 A.2d at 1019.

[6] The Court's distinction here between fraudulent transfers of money and real property is intentional because "actions to recover 'fraudulent conveyances of a determinate sum of money' . . . had been brought at law, and only at law, in late 18th-century England." *Resolution Tr. Corp. v. Pasquariello (In re Pasquariello)*, 16 F.3d 525, 529 (3d Cir. 1994) (quoting *Granfinanciera v. Nordberg*, 492 U.S. 33, 43-47 (1989)).

5

the Statute of 13 Elizabeth.[7] *See, e.g.,* Elaine A. Welle, *Is It Time for Wyoming to Update Its Fraudulent Conveyance Laws?*, 5 Wyo. L. Rev. 207, 208 (2005) ("The origins of our modern fraudulent transfer laws may be traced back to the Statute of 13 Elizabeth enacted in 1570. *See* 13 Eliz., ch. 5 (1570) (Eng.). American jurisdictions embraced the English law of fraudulent conveyances, adopting the Statute of 13 Elizabeth by statute or through common law."). That such a claim existed when Maine adopted its Constitution does not make the answer to this Motion simple because claims involving fraudulent transfers had both legal and equitable aspects to them.

It then becomes important to determine how English courts treated fraudulent transfer cases regarding real property; generally, courts of law and equity had concurrent jurisdiction over cases claiming a fraudulent transfer of land, but when the remedy sought was to set aside the fraudulent transfer, courts of equity would usually hear the case. *See In re Pasquariello*, 16 F.3d at 530. On the other hand, when the recovery sought was possession of the property through an ejectment action—an action at law—the courts of law would hear the case. *Id.* In other words, because English courts of law and equity had concurrent jurisdiction over fraudulent transfer cases, the specific nature of the claim and the relief sought are crucial to the analysis. Massachusetts and Maine seem to have followed the English courts' lead on this point.

Defendant cites to a sampling of early Massachusetts and Maine cases in an attempt to show issues of fraudulent transfers have always been tried to juries, but, as a close look will show, it depended whether the claim in the case was one at law or one in equity and what the party was seeking as relief. Particularly, where the case was not one in which the plaintiff was seeking to set aside a fraudulent transfer of land, but where the case was brought as an action at law and the

---

[7] Notably, in its infancy, Maine law incorporated the Statute of 13 Elizabeth. *See Howe v. Ward*, 4 Me. 195, 199 (1826) (pointing to "the statute of 13 Eliz. ch. 5, which has been adopted here as common law"). Thus, understanding the English practice in this area is helpful here.

issue of fraudulent transfer was ancillary to the claim at law in the case, Massachusetts and Maine caselaw supports entitlement to a jury trial.

For example, Defendant cites to *Ricker v. Ham*, 14 Mass. 137 (1817). *Ricker* undoubtedly regarded a fraudulent conveyance of land and was tried to a jury. Of crucial importance to this Court's decision, however, is that the plaintiff in *Ricker* brought an action for trespass, which is an action at law, not a suit in equity. *See Blanchard v. Baker*, 8 Me. 253, 268 (1832) ("And if . . . they have trespassed upon the defendants, they may be answerable to them in an action at law therefor . . . ."). The fraudulent conveyance of land fit into the case in the sense that it affected whether the plaintiff could properly maintain the action for trespass. However, it was not a case in which the plaintiff was seeking to invoke the court's equitable powers.

Next, Defendant points to *Blake v. Howard*, 11 Me. 202 (1834). *Blake*, like *Ricker*, involved allegations of a fraudulent conveyance and was tried to a jury. Yet, the action was for a writ of entry, which was historically a legal claim, not an equitable claim. *Cf. Eastman v. Fletcher*, 45 Me. 302, 305 (1858) (in entering a nonsuit in an action for a writ of entry, noting that the plaintiff's "remedy is not by an action at law, but by a bill in equity"). The defendant contended that the plaintiff was not entitled to a writ of entry because plaintiff's purported title had been fraudulently conveyed to the plaintiff.

Then, in *Whitehouse v. Bolster*, 95 Me. 458, 50 A. 240 (1901), the plaintiff brought an action on a probate bond against one of the defendants, a co-surety on that bond; the plaintiff was seeking contribution, i.e., money, from that defendant on the probate bond.[8] Actions on probate

---

[8] More recently, the Law Court concluded that, "although the remedy sought by the contribution plaintiff is ultimately money damages, the necessity of a determination of apportioned responsibility for those damages sounded in equity." *Thermos Co.*, 1999 ME 129, ¶ 17, 735 A.2d 484. It noted that "an action for contribution contains two distinct and significant components, one of which has always carried a right to a jury trial and one of which has pre-1820 analogues that were not triable to a jury." *Id.* ¶ 19. The contribution sought by the plaintiff in *Whitehouse* appears to the Court to be more akin to that "involv[ing] the

7

bonds were generally considered actions at law. *Cf. Clark v. Chase*, 101 Me. 270, 276, 64 A. 493, 495 (1906) (in an equity case seeking to enjoin an action at law on a guardian's bond, discussing actions on probate bonds in the context of actions at law). The plaintiff sought access to deposits in bank accounts he alleged the defendant had fraudulently transferred. Notably, the action was commenced by trustee process, which is an action at law in form but is guided by equitable considerations. *See Ticonic Nat'l Bank v. Fashion Waist Shop Co.*, 123 Me. 509, 515, 124 A. 308, 311 (1924) ("[T]his court has frequently applied equitable principles in determining the rights of the parties upon trustee process, even though in form it is an action at law."). Even if the action itself involved equitable considerations, the plaintiff brought legal claims, commenced the suit through a legal process, and was seeking to recover money from the defendants. It seems apparent that the jury trial right was properly triggered. Other early Maine cases where allegations of fraudulent transfers were made support the Court's preceding analysis that *actions at law* within which fraudulent transfers were alleged were entitled to a jury trial. *See, e.g., Porter v. Seavey*, 43 Me. 519 (1857) (writ of entry); *Brown v. Osgood*, 25 Me. 505 (1846) (writ of entry).[9]

On the other hand, when the claim in the case is a fraudulent transfer of real property and the specific relief requested is equitable in nature, the case sounds in equity. *See, e.g., Stover v. Poole*, 67 Me. 217 (1877); *Dana v. Haskell*, 41 Me. 25 (1856); *Whitmore v. Woodward*, 28 Me.

---

determination of the contribution defendant's liability for damages to the original injured party" than "the apportionment of financial responsibility between or among tortfeasors." *Id.* ¶¶ 11, 14. The first type "are matters for which there is, and has always been, a right to a jury trial." *Id.* ¶ 11.

[9] Defendant cites to *Huber v. Williams*, 2005 ME 40, 869 A.2d 737 for a contemporary example of a fraudulent transfer of land case tried to a jury. The Court does not find this case to be helpful in the current context because there is no discussion in the Law Court decision regarding the *constitutional* right to a jury trial in fraudulent transfer cases. As noted above, for equitable claims, "an advisory jury or trial by consent is available," *Cyr*, 396 A.2d at 1016, and it is not clear whether either of those options were used in *Huber*. Further, Defendant's cite to *Wisden v. Superior Court*, 21 Cal. Rptr. 3d 523 (Cal. Ct. App. 2004) is unavailing because that case involved an alleged fraudulent transfer of a determinate sum of money which, as the Court noted above, was historically an action at law because money was the relief sought.

8

392 (1848); *Traip v. Gould*, 15 Me. 82 (1838). Because such are equitable claims, no entitlement to a jury trial existed at the time of the adoption of the Maine Constitution.[10] *DaimlerChrysler Corp. v. Exec. Dir., Me. Revenue Serv.*, 2007 ME 62, ¶ 20, 922 A.2d 465 ("Actions sounding in equity, 'cases where it has heretofore been otherwise practiced,' do not have a right to a jury trial." (quoting Me. Const. art. 1, § 20)). The Court must now analyze whether WCP's fraudulent transfer action is legal or equitable.

As the Law Court provided, to answer the question of whether a claim is truly legal or equitable, the Court must determine the basic nature of the issue presented, including the relief sought. *Id.* The basic nature of the issue presented here is whether Karl Norberg fraudulently transferred away title to ostensibly valuable property to place it outside the reach of creditors such as WCP at a time when he was subject to impending deficiency judgments in favor of WCP. It is also whether these transfers, if fraudulent, should be set aside in order to put title to the Bar Harbor property back in Karl Norberg's name for WCP to levy execution upon the property. Further, the basic nature of the issue presented is also whether WCP is entitled to an order against all Defendants enjoining them from further disposing of the property. Lastly, an interrelated issue is whether a receiver should be appointed to oversee the property. These are all fundamentally equitable issues and remedies. *Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 11, 837 A.2d 129 ("injunctive relief is an equitable remedy"); 37 Am. Jur. 2d *Fraudulent Conveyances and Transfers* § 126 ("[I]t is well established that equity courts have jurisdiction to set aside conveyances made in violation of statutes or of the common law."); *id.* §

---

[10] That an equitable claim does not entitle parties to a jury trial does not mean it is forbidden to have one on an equitable claim. "Where . . . the right of trial by jury is not a constitutional right," but a jury is still seated to hear the case, "a verdict in an equity cause is merely advisory and that, if it be not satisfactory to the conscience of the court, it is discretionary with the court, either wholly to disregard the verdict or to set it aside and order a new trial . . . ." *Farnsworth v. Whiting*, 106 Me. 430, 435, 76 A. 909, 911 (1910).

9

127 ("The statutes declaring the invalidity of fraudulent conveyances and authorizing creditors to file bills in equity to subject the property to the payment of their debts are declaratory of generally recognized equitable principles."); *id.* § 129 ("[A] court of equity may appoint a receiver in an action to set aside a conveyance as fraudulent.").

Accordingly, in this case the basic nature of the issue presented, including the relief sought, is undoubtedly equitable. Equitable claims were not entitled to a jury trial when Maine's Constitution was adopted. *Cyr*, 396 A.2d at 1016. Defendant put great weight on Plaintiff's inclusion of a damages request in the prayer for relief.[11] However, "when the primary recovery pursued is equitable, the inclusion of a request for money damages does not convert the proceeding into an action at law." *DesMarais*, 664 A.2d at 844. Because the Court concludes that the primary recovery pursued here by WCP is equitable, the incidental damages request does not make this an action at law entitling Defendant to a jury trial.

The entry is:

1. Plaintiff's Motion to Strike Jury Demand as to Plaintiff's Claims is **GRANTED**.
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 1/16/19

Hon. Robert E. Murray
Justice, Maine Superior Court

---

[11] Notably, an award of damages under the UFTA, such as the one listed by WCP, is "[s]ubject to applicable principles of *equity* . . . ." 14 M.R.S. § 3578(1)(C) (emphasis added).

10