PETERS, C. J., DANFORTH, LIBBEY, EMERY and HASKELL, JJ., concurred.

---

MILO M. DANFORTH *vs.* DANIEL ROBINSON and trustee.

Somerset.     Opinion July 27, 1888.

*Insolvent law.     Discharge.     Promissory note.     Surety.*

The discharge in insolvency of one surety on a promissory note given before the insolvent act took effect, is no bar to an action on a judgment for contribution, recovered by a co-surety after the insolvent act took effect and before the insolvent's petition and discharge.

ON exceptions.

The opinion states the case and material facts.

*J. J. Parlin,* for plaintiff, cited : *Chaffee* v. *Jones,* 19 Pick. 264 ; *Bachelder* v. *Fiske,* 17 Mass. 464 ; *Howe* v. *Ward,* 4 Greenl. 200 ; *Wood* v. *Leland,* 1 Met. 387 ; 22 Pick. 505 ; *Tupper* v. *Hussey,* 1 Dane's Ab. 197 ; *Johnson* v. *Johnson,* 11 Mass. 359 ; *Warner* v. *Morrison,* 3 Allen, 566 ; *Norton* v. *Coombs,* 3 Denio, 130 ; Fells, Guaranty and Suretyship, (3 ed.) 288 ; *Schwartz* v. *Drinkwater,* 70 Maine, 409 ; *Palmer* v. *Hixon,* 74 Maine, 448 ; *Sturges* v. *Crowinshield,* 4 Wheat. 122 ; *Farmers' Bank* v. *Smith,* 6 Wheat. 131 ; *Ogden* v. *Saunders,* 12 Wheat. 213 ; *Ross* v. *Tozier,* 78 Maine, 312 ; *Wilson* v. *Bunker,* 78 Maine, 313.

*Walton and Walton,* for defendant.

Plaintiff's counsel says the action is not barred by discharge in insolvency, for it arose by virtue of a contract existing at the

time of the passage of that law and upon which that act can have no effect, citing, *Ross* v. *Tozier*, 78 Maine, 312 ; *Wilson* v. *Bunker*, 78 Maine, 313.

In 1878, plaintiff had no cause of action against the defendant and *non constat* that he ever would have. *Woodard* v. *Herbert*, 24 Maine, 358 ; *Fernald* v. *Johnson*, 71 Maine, 437 : *White* v. *Blake*, 79 Maine, 114 ; *Jemison* v. *Blowers*, 5 Barb.. 686 ; *French* v. *Morse*, 2 Gray, 111 ; *Loring* v. *Kendall*, 1 Gray, 305. .

In actions for contribution, the debt of the defendant having been paid by one also liable to pay it, a consent to such payment. is presumed from the very condition of things, and defendant is not permitted, when called upon to pay his proportional part, to claim that the plaintiff co-surety who has paid the whole, who has raised the common burden, is as a stranger to him and has paid his debt without his knowledge or consent. The foundation for this is laid " in the clearest principles of natural justice," but it does not grow out of any contract entered into at the time of the signing of the note ; it does not, therefore, stand upon a notion of mutual contract, express or implied, between the sureties, to indemnify each other in proportion (as has sometimes been argued) ; but it arises from principles of equity, independent of contract. Story's Eq. Jur. Vol. 1, § 493.

Such are the authorities, *Deering* v. *Winchelsea*, 2 B. & P.. 270 ; *Campbell* v. *Mesier*, 4 Johns. C. R. 334 ; *Norton* v. *Coons*, 3 Denio, 130 ; De Colyer on Guaranties (Morgan, Notes), 339 to 347 ; *Mathews* v. *Aiken*, 1 Comst. 595 ; *Wells* v. *Miller*, 66 N. Y. 255 ; *Tyne* v. *DeJarmette*, 26 Ala. 280 ; *Craig* v. *Aukeny*, 4 Gill. (Md.) 225 ; *Harris* v. *Ferguson*, 2 Bailey, (S. C.) 397 ; *Gould* v. *Fuller*, 18 Maine, 367 ; *Powers* v. *Nash*, 37 Maine, 325 ; *Fletcher* v. *Grover*, 11 N. H. 368 ; 1 Pomeroy, Eq. Jur. 405 ; same, Vol. 3, 468, § 1418, note ; Addison on Contracts, Vol. 3, § 1139 (Morgan's ed.).

It is true that there have been loose dicta which would seem to indicate a claim of contract made at the time of signing, although not expressly so stating, as in *Johnson* v. *Johnson*, 11 Mass. 359, and *Bachelder* v. *Fiske*, 17 Mass 463, where the

court, not having occasion to discuss or decide whether contribution was claimed upon the ground of a contract made at the time of the signing of the note or upon promise implied at the time of the payment of the money, only determined that, after payment, a promise to contribute was implied. But in *Mason v. Lord*, 20 Pick. 449, C. J. SHAW correctly stated the rule as follows : " The action of assumpsit for contribution is founded purely upon equitable principles. It proceeds upon the broad ground that where two or more are subject to a loss or burden common to all, and one bears the whole or disproportionate part, it lays an equitable claim for contribution, from those who are thereby relieved." And in *Warner* v. *Morrison*, 3 Allen, 566, in an opinion by BIGELOW, C. J., the rule is again correctly stated.

In *Liddell* v. *Wisewell*, a Vermont case recently decided, the opinion being filed April 5, 1887, the court say, " The implied obligation of the defendant to bear his proportionate share of the common burden resting on all the co-sureties is not regarded as arising from contract, but from an equitable duty which the sureties are supposed to be cognizant of and assent to at the time they enter into the contract of suretyship."

This opinion also adopts the language of SHAW, C. J., in the case of *Mason* v. *Lord*, 20 Pick. 447.

VIRGIN, J. These parties were co-sureties on a promissory note given in September, 1875. In 1879, the plaintiff paid the note to the holder, and in March, 1885, recovered judgment against the defendant for contribution. Subsequently, the defendant duly obtained his discharge in insolvency from all his debts, etc., which existed in May, 1885.

The insolvent law went into full effect on September 1, 1878, when the federal bankrupt law was repealed.

The present action is debt on the judgment of March, 1885, to which the defendant has pleaded his discharge in bar.

The principal question is : Whether one surety on a note, given before the insolvent law went into effect, who paid it and recovered judgment for contribution against his co-surety after

the insolvent law took effect, can maintain an action on the judgment *non obstante* the judgment debtor's discharge.

It seems to be settled law that as between co-sureties, the right of action for contribution in behalf of one of them who has paid the whole debt for which they were liable, arises when he pays and not before. And then, and not before, can he prove his claim for contribution against the estate of his insolvent co-surety. *Dole* v. *Warren*, 32 Maine, 94. But while the right of action did not arise until he paid, it does not necessarily follow that the original liability, which then had ripened into a right of action, had not existed before.

It is contended that, as the defendant's discharge, by force of the statute, "released him from all debts, claims, liabilities and demands which were, or might have been proved against his estate in insolvency," and which existed in May, 1885 (R. S., c. 70, § 49) ; and as the plaintiff not only paid the whole note, but also recovered judgment against the defendant for his contributory share, prior to May, 1885, the plaintiff's claim became an existing one which "might have been proved against the estate in insolvency" of the defendant, and hence was one of the claims covered by the discharge. But this language of the statute must not be taken literally, for thus construed it would include claims and debts which ante-dated the insolvent law and thus render that provision unconstitutional as impairing "the obligation of contracts" (U. S. Const. Art. 1, § 10 ; Me. Const. Art. 1, § 11 : *Palmer* v. *Hixon*, 74 Maine, 447, 449) as well as debts owed by citizens of this state to those of another state, regardless of date. *Hills* v. *Carlton*, 74 Maine, 156. Hence the "debts, claims, liabilities and demands," from which the defendant was released by his discharge, must be limited to such as originated after the law, by its terms, took effect, together with such as were between citizens of this state, unless the creditors or claimants in such excepted cases elected to prove their claims. *Fogler* v. *Clark*, 80 Maine, 237 ; *Palmer* v. *Hixon*, *supra* ; *Hills* v. *Carlton*, *supra*.

Did the liability of the defendant originate prior to the insolvent

law? We think this question has been decided in the affirmative in this state and it is, therefore, *res judicata.*

The note which these parties signed as sureties was given three years before the insolvent law was enacted, and hence the law could not have formed a part of the note " as the measure of the obligation to perform it" (*McCracken* v. *Hayward*, 2 How. 612), or of the right of contribution between the co-sureties, provided that right was founded on an implied contract or promise raised by the law from the mutual relation of the parties at the time, and in consequence of, their execution of the note, unless it became merged in the judgment of March, 1885.

This court, at an early day, decided that " at the time of executing an instrument by several persons as sureties, each one impliedly promises all the others that he will faithfully perform his part of the contract and pay his proportion of the loss arising from the total or partial insolvency of the principal. . . Such a promise resembles that by which a man binds himself to pay a certain sum of money at a future day." And following out this principle, the court held that the relation of debtor and creditor among the sureties on a bond, so as to entitle one of them to impeach a voluntary conveyance made by another, commences at the time of executing the bond and not at the time when he actually pays more than his proportion of the debt. *Howe* v. *Ward*, 4 Maine, 196. And the language above quoted was reiterated in *Thompson* v. *Thompson*, 19 Maine, 244. The same was adhered to in *Thacher* v. *Jones*, 31 Maine, 528, 532, where it was held that an indorser of a note was a creditor of the maker. So in *Pulsifer* v. *Waterman*, 73 Maine, 233, 238; *Howe* v. *Ward*, *supra*, was reaffirmed, holding that the relation of debtor and creditor existed between a first and second indorser of a promissory note when it was executed by them.

So in Massachusetts, assumpsit for contribution was sustained by a surety, who paid after the decease of his co-surety, against the latter's executors upon the implied promise of the testator. *Bachelder* v. *Fiske*, 17 Mass. 463. In a later case the heirs of a deceased surety were held to contribute to a co-surety who

paid after the decease of the defendants' intestate.    In speaking
for the whole court, Shaw, C. J., said : "The right of action
grows out of the original implied agreement arising out of their
being co-sureties, that if one shall be compelled to pay the whole
or a disproportionate part of the debt, for which both thus
collaterally and provisionally stipulated to be liable, the other
will pay such a sum as will make the common burden equal."
*Wood* v. *Leland,* 1 Met. 387, 389.    The same eminent jurist
had used similar language, *Chaffee* v. *Jones,* 19 Pick. 260, 264.

The defendant cites several authorities which hold that the
liability to contribution arises from the equitable principle that
" equality is equity," and not from contract.    Doubtless the
ancient common law knew nothing of equalizing the burdens of
sureties.    "Its conception and origin," like numberless other
modern rules of law, "are wholly due to the creative functions
of the chancellor."    Thus Bigelow, C. J., said : "The right of
contribution does not arise out of any contract or agreement
between co-sureties to indemnify each other, but on the principle
of equity which courts of law will enforce, that where two persons
are subject to a common burden, it shall be borne equally
between them.    In such cases, the law raises an implied promise
from the mutual relation of the parties.    .    .    It is sufficient
that they were under obligation to pay the same debt as sureties
for a third person."    *Warner* v. *Morrison,* 3 Allen, 566.    And
similar hints have been dropped in *Powers* v. *Nash,* 37 Maine,
322, 326.

From whatever source the right of contribution springs, the
original contract is the bed rock on which the whole super-
structure rests and to which reference must be made for a
starting point and for fixing the apportionment.    A proper
regard for the principle of *stare decisis* compels us to adhere to
the decisions of our own court.

The liability of the defendant then originating in an implied
contract of an earlier date than that of the insolvent law, could
not be affected by that law unless the claim was proved or was
merged in the judgment of March, 1885.    There is no suggestion
that it was proved, and *Ross* v. *Tozier,* 78 Maine, 312, and

*Wilson* v. *Bunker*, 78 Maine, 313, decide that it was not merged. Moreover, the constitutional prohibition against laws impairing the obligation of contracts applies to implied contracts as well as to express contracts. *Fisk* v. *Jefferson Police Jury*, 116 U. S. S. C. 131.

*Exceptions sustained.*

PETERS, C. J., WALTON, DANFORTH, LIBBEY and FOSTER, JJ., concurred.