1999 ME 129

**THERMOS COMPANY**

v.

**Elaine SPENCE et al.**

Supreme Judicial Court of Maine.

Argued May 3, 1999.
Decided Aug. 12, 1999.

---

Thomas R. McKeon, (orally), Wendell G. Large, Richardson, Whitman, Large & Badger, P.C., Portland, for plaintiff.

Marshall J. Tinkle, (orally), David M. Hirshon, Tompkins, Clough, Hirshon & Langer, P.A., Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] We are called upon in this matter to determine whether an action for contribution among allegedly joint tortfeasors carries with it a constitutional right to trial by jury. Because we conclude that it does, we affirm the order of the Superior Court (York County, *Bradford, A.R.J.*).

## I. BACKGROUND

[¶ 2] The Thermos Company alleges that, on July 6, 1993, Gary and Celeste Winton were injured in a fire caused when flammable gas leaked from a propane gas cylinder manufactured by Thermos and filled by employees of the Perkins General Store in North Berwick, Maine. The Wintons filed a complaint against Thermos. The complaint did not name the owners of the Perkins General Store as defendants, and Thermos did not move to join them in the action. *See generally* M.R. Civ. P. 14(a). Thermos entered into a settlement agreement with the Wintons, paying 2.7 million dollars in settlement of their claims.

[¶ 3] Thermos then filed this action seeking contribution from Elaine Spence and Frederick Perkins, owners of the Perkins General Store, claiming that the conflagration in which the Wintons were injured was caused, at least in part, by the negligence of the employee of the Perkins General Store who overfilled the Wintons' propane gas cylinder.

[¶ 4] Spence and Perkins requested a jury trial, and the matter was placed on the jury trial list. Thermos's motion to remove the case from the jury trial list was denied by the Superior Court. The court then granted Thermos's motion to report the action to the Law Court pursuant to M.R. Civ. P. 72(c). Spence and Perkins do not challenge the report.

[¶ 5] We recognize the issue as one of several as yet unresolved issues regarding the effects of settlement in actions sounding in tort.[1] Because the report directly raises a question of the fundamental rights of one or more parties to trial by jury, we have accepted the report. *Cf. Sirois v. Winslow*, 585 A.2d 183, 184–85 (Me.1991) (the Court will not accept constitutional issues on report where the issues are "in the abstract."); *accord Matheson v. Bangor Publishing Co.*, 414 A.2d 1203, 1205 (Me.1980); *Swanson v. Roman Catholic Bishop*, 1997 ME 63, ¶ 16, 692 A.2d 441, 446 (Lipez, J., dissenting). We limit our analysis, however, to the question directly presented: whether the Superior Court erred by denying Thermos's motion to remove this case from the jury trial list.

## II. STANDARD OF REVIEW

[¶ 6] Thermos argues that the right to contribution between joint tortfeasors is an equitable remedy for which there is no right to a jury trial under the Maine Constitution. While Thermos cannot claim a constitutional right to a nonjury trial, *cf. State v. Bleyl*, 435 A.2d 1349, 1366 (Me. 1981), its consent is required for a jury trial in a case in which "a right of trial by jury ... does not exist under the Constitution or statutes of the State of Maine." M.R. Civ. P. 39(a); *see also* M.R. Civ. P. 39(d) (requiring consent of the parties for trial by advisory jury of actions not triable of right by a jury). We review de novo the Superior Court's conclusion that Spence and Perkins are entitled to a jury trial of Thermos's contribution action. *See Collins v. Trius, Inc.*, 663 A.2d 570, 572 (Me. 1995).

## III. THE RIGHT TO A JURY TRIAL IN CIVIL CASES

[¶ 7] A party's right to a jury trial in civil matters may be founded in statute or in the Maine Constitution.[2] The Legislature has not provided a statutory right to a trial by jury that would apply to this case.[3] Spence and Perkins must therefore look to the constitution for the right to have their case tried to a jury. The constitution provides: "In all civil suits ... the parties shall have a right to a trial by jury, except in cases where it has heretofore been otherwise practiced." Me. Const. art. I, § 20.

[¶ 8] When a new cause of action, unknown at the time the constitution was adopted, is created by the Legislature or recognized by the court, the right to a jury trial will depend on the nature of that new cause of action. If the nature of the claim is such that "its pre–1820 analogue was not tried to a jury" the new cause of action will similarly carry no such right. *City of Portland v. DePaolo*, 531 A.2d 669, 671 (Me.1987); *see also Portland Pipe Line Corp. v. Environmental Improvement*

---

1. For a review of issues remaining unresolved in this area, see Arlyn H. Weeks, *The Unsettling Effect of Maine Law on Settlement in Cases Involving Multiple Tortfeasors*, 48 ME. L. REV. 78 (1996) [hereinafter, Weeks, *Settlement in Cases Involving Multiple Tortfeasors* ].

2. The Federal Constitution does not affect the complaint at issue here because the Seventh Amendment, which provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved," U.S. Const. amend. VII, does not apply to the states. *See Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 217, 36 S.Ct. 595, 60 L.Ed. 961 (1916).

3. Had Spence and Perkins been made parties in the original suit, they would have had a statutory right to a jury trial. *See* 14 M.R.S.A. § 156 (1980) ("In a case involving multi-party defendants, ... any defendant shall have the right through the use of special interrogatories to request of the jury the percentage of fault contributed by each defendant.").

*Comm'n*, 307 A.2d 1, 29 (Me.1973) (When the new cause of action "includes features that render it equitable in nature, there is no requirement of a jury trial as a matter of right."); *accord Thompson v. Pendleton*, 1997 ME 127, ¶ 10, 697 A.2d 56, 58; *Kennebec Fed. Sav. & Loan Ass'n v. Kueter*, 1997 ME 123, ¶ 4, 695 A.2d 1201, 1202; *Town of Falmouth v. Long*, 578 A.2d 1168, 1172 (Me.1990). On the other hand, when " 'a plaintiff seeks damages as full compensation for an injury, the claim is legal and the plaintiff is entitled to a jury trial.' " *DesMarais v. Desjardins*, 664 A.2d 840, 844 (Me.1995) (quoting *King v. King*, 507 A.2d 1057, 1059 (Me.1986)).

[¶ 9] Accordingly, when a court is called upon to determine whether a right to a jury trial attaches to a new cause of action, it is required to determine the nature of the cause of action, identify a pre–1820 analogue to that cause of action, and determine the treatment of that analogue prior to 1820.

[¶ 10] We must therefore determine, first, the nature of an action for contribution, specifically, the nature of the issues to be tried and the remedy sought, *see Cyr v. Cote*, 396 A.2d 1013, 1016 (Me.1979), *quoted in DesMarais*, 664 A.2d at 844; second, the applicable pre–1820 analogues; and finally, whether the analogues were triable of right to a jury prior to the adoption of the constitution.

## IV. THE NATURE OF CONTRIBUTION ACTIONS

[¶ 11] Modern contribution actions between tortfeasors actually contain two significant components. The first component involves the determination of the contribution defendant's liability for damages to the original injured party. The issues for adjudication in this portion of a contribution action—negligence, causation, damages—are matters for which there is, and has always been, a right to a jury trial.[4]

[¶ 12] We addressed this component of a contribution action in *Packard v. Whitten*, 274 A.2d 169 (Me.1971). Although we referred to contribution as an equitable right, we set out the following analysis of the nature of a contribution claim:

> The right of one joint tort-feasor to contribution from another is a derivative right based upon a final determination that negligence of the ... defendant contributed to the ... injury. This determination may be made by a judgment in favor of the injured party or, when the injured party has not included the [contribution] defendant in his action, *by a finding of concurring negligence which would have entitled the injured party to such a judgment* if he had sought one.

*Id.* at 174 (citations omitted) (emphasis added).

[¶ 13] As we recognized in *Packard*, a contribution action has at its core the determination of liability for the original injury. A defendant in a contribution action cannot be required to contribute to damages owed by another tortfeasor unless the contribution defendant has been found to have been a cause of the damages to the original injured party through the contribution defendant's own negligence. The determination of liability for injury in this context has always been triable of right to a jury.

[¶ 14] The second component in a contribution action involves the apportionment of financial responsibility between or among tortfeasors. This component did not have a clear existence in 1820 because, although recognized in other contexts,[5]

---

4. An action to recover damages for personal injury proximately caused by the defendant's negligence is an action "at common law," loosely referred to as a "legal" cause of action. The right to a jury trial in such an action has never been questioned. *See, e.g., Harriman v. Maddocks*, 560 A.2d 11, 12 (Me. 1989); *DesMarais*, 664 A.2d at 844.

5. *See Danforth v. Robinson*, 80 Me. 466, 470–71, 15 A. 27 (1888) (discussing the con-

contribution actions between tortfeasors were not cognizable in the jurisprudence preceding the adoption of the Maine Constitution. *See* W. Page Keeton Et Al., Prosser And Keeton On The Law Of Torts § 50 at 336–37 (5th ed.1984) (discussing seminal case of *Merryweather v. Nixan*, 1799, 8 Term. Rep. 186, 101 Eng. Rep. 1337, in which Lord Kenyon held that such a claim would not lie because it rested entirely on the plaintiff's own deliberate wrong).

[¶ 15] The right to contribution between joint tortfeasors in Maine did not arise until 1918. Unlike many other states, Maine's recognition of the cause of action arose out of judicial, not legislative, action.[6] In *Hobbs v. Hurley*, 117 Me. 449, 104 A. 815 (1918), we declared for the first time, that contribution from a joint tortfeasor "is an equitable right founded on acknowledged principles of natural justice and enforceable in a court of law." *Id.* at 451, 104 A. 815.

[¶ 16] Since that time we have consistently referred to contribution as a claim arising from concepts that were equitable in nature. In *Bedell v. Reagan*, 159 Me. 292, 192 A.2d 24 (1963), we explained the equitable component more explicitly:

> It is of the very proper *object of equity* to prevent the application of a universal legal principle in an eventuality where unconscionable and unjustifiable hardship must otherwise ensue.

*Id.* at 298, 192 A.2d 24 (emphasis added). *See also Emery Waterhouse Co. v. Lea,*

467 A.2d 986, 996 (Me.1983); *Otis Elevator Co. v. F.W. Cunningham & Sons,* 454 A.2d 335, 337 (Me.1983); *Roberts v. American Chain & Cable Co.,* 259 A.2d 43, 49–50 (Me.1969).

[¶ 17] Most recently, in *St. Paul Ins. Co. v. Hayes,* 676 A.2d 510 (Me.1996), we concluded that "[a]n action for contribution is an equitable action and not one for damages." *Id.* at 512. In *St. Paul* we were called upon to determine whether a statute of limitations that was applicable to certain actions "'for damages ... arising out of the provision or failure to provide health care services,'" *id.* at 512 n. 2 (quoting 24 M.R.S.A. § 2502(6) (1990)), applied to a contribution action. We focused on the equitable component of the cause of action, that is, the relationship between the tortfeasors, recognizing that, although the remedy sought by the contribution plaintiff is ultimately money damages, the necessity of a determination of apportioned responsibility for those damages sounded in equity. *See id.* at 512.[7]

[¶ 18] Although the once-distinct qualities of matters sounding in equity have blurred through the years, the nature of equitable claims as those requiring creative, injunctive, or unique action by the court remains constant. *See Cyr.* 396 A.2d at 1019. For such complaints there is simply "no requirement of a jury trial as a matter of right." *Portland Pipe Line,* 307 A.2d at 29; *accord Kennebec Fed. Sav. & Loan,* 695 A.2d at 1202; *In re Shane T.,* 544 A.2d 1295, 1296–97 (Me.1988); *DePaolo,* 531 A.2d at 671.

---

cept and origin of contribution between co-sureties); *Bachelder v. Fiske*, 17 Mass. 464, 468 (1821) ("[I]t has been long settled in [Massachusetts] courts that a surety, who has paid the debt of the principal, may have an action for contribution against his co-surety"); *see also* John Norton Pomeroy, Equity Jurisprudence § 14.18 (5th ed.1941) [hereinafter Pomeroy, Equity Jurisprudence] (noting several circumstances in which a party would be entitled, under equitable principles, to a contribution).

**6.** In most states, contribution between tortfeasors is a legislatively created cause of action.

*See* W. Page Keeton Et Al., Prosser And Keeton On The Law Of Torts § 50 at 338–39 (5th ed.1984); Restatement (Second) Of Torts § 886A (1979); *see also, e.g.,* Mass. Gen. Laws Ann. ch. 231B, § 1–4 (1986); Conn. Gen. Stat. Ann. § 52–572h(h) (1991). For a survey of the law of contribution in the United States, *see* Restatement (Third) Of Torts: Apportionment Of Liability § 33 cmt. a reporter's note (Proposed Final Draft 1999).

**7.** *See, e.g., Spottiswoode v. Levine,* 1999 ME 79, ¶ 18, 730 A.2d 166, 172 (discussing equitable origin of contribution between contract guarantors).

[¶ 19] It is therefore evident that an action for contribution contains two distinct and significant components, one of which has always carried a right to a jury trial and one of which has pre–1820 analogues that were not triable to a jury. We must therefore determine which aspect of an action for contribution controls the jury trial decision.

[¶ 20] Thermos argues that the most compelling aspect of a contribution action is the apportionment issue, which is equitable in nature, and that, "[b]ecause matters in equity were never triable of right to a jury," *DiCentes v. Michaud*, 1998 ME 227, ¶ 7, 719 A.2d 509, 512, there can be no corresponding right to a jury trial in such a case. Spence and Perkins focus on the liability determination and urge us to apply the jury trial right accompanying such a determination to a contribution action as a whole.

[¶ 21] For purposes of determining the right to trial by jury, we are persuaded that the controlling issues for adjudication in a contribution action are those related to determination of liability to the original injured party. The adjudication of negligence, causation, and damages form the foundation of a contribution action. Put another way, the determination of liability of one tortfeasor to another actually turns on the relationship between the original injured party and the contribution defendant "and not on any relationship between the parties to the contribution action." *In re N–500L Cases*, 691 F.2d 15, 21 (1st Cir.1982). The gravamen of a contribution action, therefore, " 'involves determinations of rights and liabilities traditionally arising in common law suits for negligence.' " *Id.* (quoting *Palmer v. United States*, 652 F.2d 893, 896 (9th Cir.1981)).[8] Because a party would have had a right to try those issues to a jury at the time the constitution was adopted, Spence and Perkins have a similar right to a jury trial of Thermos's claim against them.[9]

[¶ 22] To hold otherwise would place the first settling defendant in the position of eliminating a later-identified defendant's right to jury trial. We will not countenance a result that allows the first-named tortfeasor to deny fellow tortfeasors the right to a jury trial merely by settling with the injured party first, or by omitting to join the other tortfeasors in the first trial.[10]

8. In *In re N–500L Cases*, 691 F.2d 15, the First Circuit reached its determination that the parties to a contribution action are entitled to a jury trial through a slightly different analysis than ours. It determined that its previous references to the term "equitable" to describe the right to contribution used the term only "in its sense of fairness and justice and [did] not address the jury trial question." *Id.* at 20. In contrast, our use of the term "equitable" here, as well as in our prior opinions regarding contribution claims, is meant to describe an action with the characteristics of one that originally fell within the jurisdiction of the English Court of Chancery, which rose to prominence as a natural compliment to English courts of law. Because the common law courts were limited to relatively rigid traditional remedies of compensatory damages, the courts of equity were created, with the ability to tailor unique remedies that were designed to more closely approximate equality between the parties. *See Laskey v. L. & L. Manchester Drive–In, Inc.*, 216 A.2d 310, 315 (Me.1966); *see also Miller v. Kenniston*, 86 Me. 550, 551, 30 A. 114 (1894) (noting the

familiarity and the force of the maxim "equality is equity"); *Savings Inst. v. Makin*, 23 Me. 360, 366 (1844) (discussing application of the same maxim).

9. *Cf. Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970) (holding that the right to jury trial under the Federal Constitution was to be determined by looking to the nature of the issue to be tried, and was not dependent on character of overall action).

10. Our analysis of the administrative process for assessing environmental damages was similar. Just as we hold here that the settlement with one tortfeasor cannot defease other unsued tortfeasors of a right to jury trial in a subsequent contribution action, we previously held that "inserting the [Coastal Protection] Fund as a middleman in what would otherwise be a suit for damages against the terminal operator does not alter the fact that the procedure is one at law, a procedure, consequently, which must provide for a jury determination of facts as a matter of right." *Portland Pipe Line*, 307 A.2d at 29.

[¶ 23] In sum, Thermos suggests no justification for a holding that would allow the first defendant to the altar to usurp all other prospective defendants' rights to jury trial, and we find none.[11] Implicit in our past discussions of the right to contribution was the assumption that there is a right to a jury trial of such actions, *see, e.g., Packard,* 274 A.2d at 180–81 (opining that a "change as to [the right to] contribution will result in no insuperable difficulties for the courts or *juries*") (emphasis added), and jury trials were in fact held in many of the cases in which we have discussed aspects of contribution claims, *see, e.g., id.* at 172; *Emery Waterhouse Co.,* 467 A.2d at 989.[12]

■ [¶ 24] Finally, we reject Thermos's invitation to bifurcate the process. Thermos suggests that the liability portion of the claim could be presented to the jury while the apportionment of liability between tortfeasors would be left to the court. We decline to adopt an approach that could require a different factfinder to determine apportionment after a determination of liability. Although the Legisla-

ture has not yet directly addressed contribution actions, it has signalled its intent that apportionment determinations in matters involving multiparty defendants be made by a jury at the request of "any defendant." *See* 14 M.R.S.A. § 156 (1980). As with the liability determination, it would make little sense to deprive a later-named defendant of the right to have a jury determine the respective responsibilities of the tortfeasors while allowing those named in the initial action access to a jury.[13]

[¶ 25] We conclude therefore that parties to a contribution action have a right to trial by jury on issues of liability as well as apportionment of fault.

The entry is:

Judgment affirmed.

---

11. Some states have eliminated the complexity and possible confusion inherent in this piecemeal approach to liability determinations by requiring a plaintiff to name all possible defendants. *See e.g.,* Kan. Stat. Ann. § 60–258a(c) (1987), *cited in* Weeks, *Settlement in Cases Involving Multiple Tortfeasors, supra* note 1, at 105 n. 161. While this approach has the benefit of simplicity, multiple policy considerations would be involved in requiring the consolidation of all claims in a single action.

12. *See also* Weeks, *Settlement in Cases Involving Multiple Tortfeasors, supra* note 1, at 85 ("Of course, any [subsequent contribution action] will require a new allocation of fault *by a new jury,* with a second trial of the facts.") (emphasis added).

13. When distinct causes of action or defenses, some of which are legal and some of which are equitable, are presented in a single case, a dual track for adjudication is necessary, allowing matters at law to be tried to a jury, while the equitable actions are tried to the court. *See Avery v. Whatley,* 670 A.2d 922, 925 (Me.1996); *Harriman,* 560 A.2d at 12–13. In such a case, the trial court has discretion to decide the order in which the issues are tried. *See Harriman,* 560 A.2d at 13. Here, Thermos's action for contribution presents a single cause of action with distinct legal and equitable components. Thus, the cause of action should be tried in a unitary process.