STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. RE-05-41



THEODORE WAINWRIGHT,

     Plaintiff,

     v.                                          ORDER

CITY OF SOUTH PORTLAND,

     Defendant.

Before the court are two motions for summary judgment: (1) a motion by defendant City of South Portland for summary judgment on all counts of the complaint and (2) a motion by third-party defendant Maietta Construction Co. for summary judgment dismissing the third-party complaint brought against it by the City.

In his complaint plaintiff Theodore Wainwright alleges that he sold some 400 acres of land to the City of South Portland for $990,000 in 1999, that the fair market value of the land far exceeded $990,000 and that to the extent that the value of the land exceeded $990,000 his conveyance constituted a gift to the City. Complaint ¶ 8. It is undisputed that Wainwright's deed to the City provided as follows:

> The Premises are hereby conveyed subject to the following conditions, covenants and restrictions, which are intended to be and shall be real covenants running with and encumbering the title to the Premises:
>
> 1. The Premises shall not be developed or used for any other use or purpose other than for parks and recreational uses . . . .
>
> 2. The Grantee itself shall not, nor shall it allow any other person or entity, to remove soils or loam from the Premises in any manner . . . .
>
> 3. The Premises shall be known and identified publicly by an official name that includes the term "at Wainwright Farms."

Exhibit A to Complaint.

After the conveyance of the property, the City entered into a contract with Maietta Construction to construct a community recreation field complex on the former Wainwright property. Wainwright alleges that notwithstanding ¶ 2 of the above "conditions, covenants, and restrictions" and notwithstanding language in the Maietta contract prohibiting Maietta from removing any surplus topsoil, the City permitted Maietta to remove loam from the property and that as of the date of the complaint, approximately 4162 to 7280 cubic yards of topsoil are still missing from the site. Complaint ¶¶ 24-25, 28-29, 31.

In Count I of his complaint, Wainwright seeks a declaratory judgment that by virtue of the removal of loam, title to the property has reverted to Wainwright pursuant to 30-A M.R.S. § 5653. In Count II of his complaint Wainwright argues that the City has violated a statutory requirement that it must perpetually comply with the conditions of his gift pursuant to 30-A M.R.S. § 5654. In Count III of his complaint, Wainwright argues that the conditions attached to his deed were conditions subsequent and upon their breach he is entitled to re-enter and recover the property. In Count IV of his complaint Wainwright alleges that the City's actions constitute a breach of covenant for which he has no adequate remedy at law.

1.    Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil,* 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered

2

in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

## 2.   Undisputed and Disputed Facts

In this case there area number of disputed facts but the core facts are undisputed: that the land was sold to the City for $990,000, that Wainwright procured an appraisal stating that the value of the land was $1.7 million,[1] that the parties contemplated that any value in excess of $990,000 would be treated as a gift, and that the deed contained the language as to "conditions, covenants and restrictions" noted above. City's SMF dated August 15, 2007 ¶¶ 20-21, 58, 63-64 (admitted by plaintiff); Exhibit A to complaint. For purposes of this motion, the City has also acknowledged that loam was removed from the property by Maietta on three occasions. City SMF dated August 15, 2007 ¶¶ 79, 82-88, 90-91, 93, 96. The City contends that on all of those occasions, corrective action was taken after the City and/or Wainwright complained. City SMF dated August 15, 2007 ¶¶ 80, 89, 91, 98. Wainwright disagrees that there were only three such incidents and contends, based on an engineering report prepared by Summit Engineering, that amounts of the loam originally on the site are still missing. *See* Wainwright SMF dated September 10, 2007 responding to ¶¶ 79-80, 82-91, 93, 96, 98 of City SMF.

---

[1]   The City does not necessarily agree that that $1.7 million figure is correct. There is also an appraisal in the record valuing the property at $ 1,000,000.

3

On the summary judgment record, the court agrees that Wainwright has not offered any admissible evidence that there were more than three incidents in which loam was removed. *See id. See also* City SMF dated August 15, 2007 ¶ 81 and Wainwright response thereto. Moreover, the citations offered by the City support the factual assertions made in ¶¶ 79-80, 82-91, 93, 96, and 98 of its SMF. Finally, while Wainwright relies substantially on Bousquet Exhibit 4 in his SMF, that document is hearsay.

Nevertheless, the summary judgment record leaves an open question of whether, in at least one instance, loam that was removed from the former Wainwright property and placed on the access road was ever replaced. *See* City SMF 91; Vincent Maietta Dep. 63-64 (stating only that instructions were given to discontinue the practice). On this record therefore, taking the facts in the light most favorable to the party opposing summary judgment, there remains an issue as to whether some loam was removed and never replaced.[2]

3. Plaintiff's Claim that Property Should Revert to Donor Under 30-A M.R.S. § 5653

Wainwright contends that the effect of his conveyance of land to the City was that the City received the land in trust, that the City failed to comply with the terms of the trust instrument, and that under 30 M.R.S. § 5653(3), the property therefore reverts to the donor.

In pertinent part, 30-A M.R.S. § 5653 provides as follows:

---

[2] In the summary judgment record, the City has detailed various steps it took to prevent Maietta from removing any loam from the property. Based on this record, an argument could perhaps be made that, even if Maietta removed loam and did not restore all of it to the property, the City neither removed soils or loam itself nor did it "allow" Maietta to remove soils or loam from the property. However, the court does not understand the City to be making this argument in its motion for summary judgment.

4

> This section governs a municipality's receipt of money or other property in trust for any specified public purpose . . . .
>
> 3. Reversion to donor. If the municipality fails to comply with the terms of the trust instrument, the trust fund reverts to the donor or the donor's heirs.

The City points out that the Law Court in *State v. Rand*, 366 A.2d 183, 196-97 (Me. 1976), rejected a claim that when the State Highway Department took by eminent domain land that had been given in trust for a municipal park, the proceeds should revert back to the heirs of the donor. Wainwright correctly points out, however, that at the time of the donation in *Rand*, the predecessor statute to § 5653 only applied to donations of money in trust. *See* 366 A.2d at 187. Since then, the first sentence of the precursor to § 5653 was broadened to cover donations in trust of money "or other property." Accordingly, Wainwright argues, § 5653(3) – the reverter provision – applies here if he can prove that loam has been removed.[3]

Based on the established principle that courts are reluctant to declare forfeitures and that, where possible, deed language should be construed as creating covenants rather than conditions, *see, e.g., Inhabitants of Frenchville v. Gagnon*, 112 Me. 245, 246-47, 91 A.2d 951 (1914), the City argues that the court should find reverter under § 5653 unavailable in this case. The court does not need to reach those arguments, however, because it concludes that Wainwright is not entitled to relief under § 5653 based on the nature of the transaction and the language of § 5653(3) itself. Wainwright is correct that a trust can be created even when express trust language is not used. *See Rand*, 366 A.2d at 195. However, in this case, it is undisputed that the transaction at issue was both a sale (for $990,000) and a gift (of the value of the property in excess of $990,000). Where

---

[3] The court would be inclined to interpret "removal" for purposes of the deed as requiring permanent rather than temporary removal but as noted above, there is on this record a potentially disputed factual issue as to whether loam has been permanently removed.

a below-market sale, as opposed to a donation is involved, the transaction cannot be deemed to create a trust. For there to be a trust, there has to be ascertainable trust property. *See* Restatement Third Trusts § 2, comment i (2003). While a donation of property for public purposes may constitute a trust even without express words establishing a trust, the court is not aware of any authority that a below market sale turns all the property in question (even the portion paid for) into a trust.[4]

Second, even if the court were to overlook the above problem, §5653(3) only provides for reversion of "the trust fund" (emphasis added). No fund is involved in this case, and there is no comparable provision in the statute for reversion of trust "property." The first principle of statutory constitution is to follow the plain meaning of the statutory language. Here, the words "other property" were added to the first sentence of § 5653 but not to § 5653(3). In context, this makes sense. If trust conditions are not being followed, trust money can readily be surrendered to the donor. As illustrated in this case, however, a host of practical problems would be created by subjecting property that has already been transformed into a recreation complex to reversion.

The City is entitled to summary judgment dismissing Wainwright's claim for reversion under 30-A M.R.S. § 5653.

---

[4] There is no evidence before the court that property was ever divided into separate portions - one to be sold to the City and another to be donated to the City. The court is also not aware of any authority for the proposition that where a portion of the value of certain property is donated and another, larger portion of the value is paid for, the entire property should be treated as a trust. Under these circumstances, if reverter were to apply, how could the court determine what portion of the property should revert?

as opposed to a donation is involved, the transaction cannot be deemed to create a trust. For there to be a trust, there has to be ascertainable trust property. *See* Restatement Third Trusts § 2, comment i (2003). While a donation of property for public purposes may constitute a trust even without express words establishing a trust, the court is not aware of any authority that a below market sale turns all the property in question (even the portion paid for) into a trust.[4]

Second, even if the court were to overlook the above problem, §5653(3) only provides for reversion of "the trust fund" (emphasis added). No fund is involved in this case, and there is no comparable provision in the statute for reversion of trust "property." The first principle of statutory constitution is to follow the plain meaning of the statutory language. Here, the words "other property" were added to the first sentence of § 5653 but not to § 5653(3). In context, this makes sense. If trust conditions are not being followed, trust money can readily be surrendered to the donor. As illustrated in this case, however, a host of practical problems would be created by subjecting property that has already been transformed into a recreation complex to reversion.

The City is entitled to summary judgment dismissing Wainwright's claim for reversion under 30-A M.R.S. § 5653.

---

[4] There is no evidence before the court that property was ever divided into separate portions - one to be sold to the City and another to be donated to the City. The court is also not aware of any authority for the proposition that where a portion of the value of certain property is donated and another, larger portion of the value is paid for, the entire property should be treated as a trust. Under these circumstances, if reverter were to apply, how could the court determine what portion of the property should revert?

4.     <u>Plaintiff's Claim Pursuant to 30-A M.R.S. § 5654</u>

Count II of Wainwright's complaint contends that Wainwright is entitled to relief under 30-A M.R.S. § 5654, which provides in pertinent part as follows:

> This section governs a municipality's receipt of a conditional gift for any specified public purpose . . . .
>
> 2. <u>Perpetually comply with conditions</u>. When the donor or the donor's representative has completed the donor's part of the agreement concerning the execution of a conditional gift, the municipality shall perpetually comply with . . . the conditions upon which the agreement was made.

The court is willing to assume that this statute is applicable to the portion of the transaction that constituted a gift by Wainwright and that Wainwright has the right to enforce the condition. Notably, however, § 5654 contains no provision for reversion. In addition, the well-established principle in Maine law that forfeitures are not favored, strongly counsels against implying such a remedy.

Wainwright argues that the statute should be interpreted to give him the same remedy he would have if there were a breach of a "condition subsequent" – a right to re-enter the property and recover title. As noted above, however, there is a well-established principle that deed conditions and restrictions will be interpreted as covenants rather than conditions subsequent. This prevents the court from implying a re-entry remedy. Indeed, if the Legislature had wanted to provide for reversion or re-entry in § 5654, it would have said so. *See Larrabee v. Penobscot Frozen Foods Inc.*, 486 A.2d 97, 101 (Me. 1986). This does not mean, however, that Wainwright would not be entitled to injunctive relief to enforce the condition if he proves that loam has been removed and not replaced.

Accordingly, the City's motion for summary judgment as to Count II is granted to the extent that Wainwright is seeking reversion or a right of re-entry but is denied to

7

the extent that Wainwright is seeking injunctive relief to enforce the conditions in the deed.

5.      Plaintiff's Claim for Breach of a Condition Subsequent

Irrespective of Wainwright's statutory claims, Count III of his complaint seeks to have the court declare that he is entitled to reenter and recover title to the property by reason of the City's alleged breach of a condition subsequent. As noted in *Inhabitants of Frenchville v. Gagnon* and the cases cited therein, *see* 112 Me. at 247, 91 A. at 951-52, if language in a deed makes it doubtful whether a condition subsequent or a covenant is meant, the language is always construed as a covenant. Moreover, in this case, there is no ambiguity as to the language:

> The premises are hereby conveyed subject to the following conditions, covenants and restrictions, <u>which are intended to be and shall be real covenants</u> running with and encumbering the title to the premises.

(emphasis added). Under the language of the deed, therefore, its conditions are to be treated as covenants.

The Town is therefore entitled to summary judgment on Wainwright's "condition subsequent" claim set forth in Count III of the complaint.

6.      Plaintiff's Claim for Breach of Covenant

From the foregoing discussion, it follows that there are disputed issues of fact as to whether the City is currently in breach of the covenant that no loam was to be removed and Wainwright may be entitled to injunctive relief on this issue depending on whether he can prove his claim at trial.

8

7.  Maietta's Motion for Summary Judgment

The City's third-party complaint against Maietta asserts three causes of action: a common law claim for contribution or indemnity based on negligence, a claim alleging that Maietta breached its contract with the City by removing loam from the property, and a claim under the indemnification clause of Maietta's contract. Initially, the court agrees with Maietta that the City's contribution or indemnity claim based on negligence fails to state a claim upon which relief may be granted. Such a claim may only be brought if Maietta were potentially a joint tortfeasor. *Thermos Co. v. Spence*, 1999 ME 129 ¶ 11, 735 A.2d 484, 487. Since Maietta did not owe any duty to Wainwright, the City's contribution claim based on negligence fails as a matter of law.

Maietta argues that this necessarily requires the dismissal of the entire third-party complaint, relying on the language in M.R.Civ.P. 14(a) that a third-party defendant is a party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." The court rejects this view. Third-party claims do not need to be based on shared liability but may be based on any theory. *See* 6 C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure: Civil 2d* § 1446 at 361-63, 372, §§ 1447, 1451 (1990) (discussing federal counterpart of M.R.Civ.P. 14(a)).[5]

Maietta's second argument - that summary judgment should be granted on the City's breach of contract claim against Maietta because reversion of the field was not reasonably within the contemplation of the parties - need not be considered given the court's ruling that the City is entitled to summary judgment on Wainwright's reversion

---

[5]  As a practical matter, dismissing the City's third-party claim would not preclude the City from filing a separate action for breach of contract and contractual indemnity. That action would almost certainly be consolidated with the instant case, and all parties would be left in the same position.

9

and re-entry claims. In any event, on the existing record, this would present a disputed question of fact. At a minimum, requiring Maietta to pay damages sufficient to restore any loam that was removed from the property and not replaced would reasonably have been within the contemplation of the parties.

Maietta's final argument is addressed to Count III of the third-party complaint. It contends that the claims in this case do not fall within the indemnification provisions in its contract with the City. In pertinent part, the contractual language provides as follows:

> (h)     The CONTRACTOR and his surety shall indemnify and save harmless the CITY, his officers and employees from all suits, actions or claims of any character brought . . . because of any act or omission, neglect, or misconduct of said CONTRACTOR . . . .
>
> (j)     The CONTRACTOR shall and does hereby agree to indemnify, save harmless and defend the CITY from the payment of any sum or sums of money to any person whomsoever on account of claims or suits growing out of . . . damages to property, caused by the CONTRACTOR, his employees, agents or sub-contractors in any way attributable to the performance and execution of the work herein contracted for, including (but without limiting the generality of the foregoing), all claims for service, labor performed, material furnished, provisions and suppliers, injuries to persons or damage to property, liens, garnishments, attachments, claims, suits, costs, attorney's fees, costs of investigation and defense.    It is the intention of this paragraph to hold the CONTRACTOR responsible for the payment of any and all claims, suits, liens, of any nature [sic] character in any way attributable to or asserted against the CITY, or the CITY and the CONTRACTOR, which the City may be required to pay.  In the event the liability of the CONTRACTOR shall arise by reason of the sole negligence of the CITY and/or the sole negligence of the CITY's agents, servants or employee, then and only then, the CONTRACTOR shall not be liable under the provisions of this paragraph.

Maietta SMF dated September 7, 2007 ¶ 7.

This language is broad enough to encompass the claim of indemnification asserted by the City in this case.

The entry shall be:

Defendant City of South Portland's motion for summary judgment is granted as to Counts I and III of the complaint and is granted with respect to Count II to the extent that Count II seeks relief in the nature of reverter or re-entry. The City's motion for summary judgment is denied with respect to Count II to the extent that plaintiff is seeking injunctive relief to enforce conditions attached to a gift and is also denied as to Count IV.

Third-party defendant Maietta Construction Inc.'s motion for summary judgment is granted as to Count I of the third-party complaint and denied as to Counts II and III of the third-party complaint.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:     March _27_, 2008

Thomas D. Warren
Justice, Superior Court

11



## STATE OF MAINE
### CUMBERLAND COUNTY SUPERIOR COURT

142 FEDERAL STREET
PORTLAND, MAINE 04101

To:

RUSSELL PIERCE ESQ
PO BOX 4600
PORTLAND ME 04112

*Defendant*
*SP*



## STATE OF MAINE
### CUMBERLAND COUNTY SUPERIOR COURT

142 FEDERAL STREET
PORTLAND, MA· · · ·

To:

*plaintiff*

JEFFREY EDWARDS ESQ
PO BOX 9546
PORTLAND ME 04112



## STATE OF MAINE
### CUMBERLAND COUNTY SUPERIOR COURT

142 FEDERAL STREET
PORTLAND, MAINE 04101

To:

THOMAS MCKEON ESQ
PO BOX 9545
PORTLAND ME 04112